UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDDIE GRANT, JR., JENNIFER HAMILTON; MICHAEL STIEFEL; CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; AND SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EDWARD M. LAMONT, JR., in his official capacity; JAMES ROVELLA, in his official capacity; PATRICK GRIFFIN, in his official capacity; MARGARET E. KELLY, in her official capacity; DAVID R. APPLEGATE, in his official capacity; JOSEPH T. CORRADINO, in his official capacity; SHARMESE L. WALCOTT, in her official capacity; DAVID R. SHANNON, in his official capacity; MICHAEL A. GAILOR, in his official capacity; CHRISTIAN WATSON, in his official capacity; JOHN P. DOYLE, JR., in his official capacity, PAUL J. NARDUCCI, in his official capacity; PAUL J. FERENCEK, in his official capacity; MATTHEW C. GEDANSKY, in his official capacity, MAUREEN PLATT, in her official capacity; ANNE F. MAHONEY, in her official capacity, <br><br> Defendants. | CIV. NO. 3:22-cv-01223-JBA <br><br> March 1, 2023 <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DKT. 29)** |

      Each of the Defendants has a direct and substantive role in enforcing Conn. Gen. Stat. §§ 53-202a-f and Conn. Gen. Stat. §§ 53-202h-j (the "'assault weapons' ban"), and would do so in prosecution of violations by the Plaintiffs. As such, Plaintiffs respectfully oppose the Defendants' Motion to Dismiss.

      Defendants have moved the Court to dismiss the Plaintiffs' claims against Edward M. Lamont, Jr., Patrick Griffin, Margaret E. Kelly, David Applegate, Joseph T. Corradino, David

**ORAL ARGUMENT NOT REQUESTED**

1

R. Shannon, Michael A. Gailor, Christian Watson, Paul J. Ferencek, Matthew C. Gedansky, Maureen Platt, and Anne F. Mahoney (together, the "moving Defendants") for lack of subject matter jurisdiction, citing the Eleventh Amendment and their alleged lack of a requisite connection to the enforcement of the "assault weapons" ban. The Defendants, however, minimize their roles and connection to the enforcement of the "assault weapons" ban far beyond reason. Thus, the Plaintiffs respectfully ask the Court to deny the Defendants' motion in its entirety.

## RELEVANT FACTUAL BACKGROUND

On September 29, 2022, the Plaintiffs filed this action challenging the constitutionality of Connecticut's "assault weapons" ban, and seeking declaratory and injunctive relief to halt the Defendants' enforcement of it. Dkt. 13. The Plaintiffs assert that, in the aftermath of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (Jun. 23, 2022), Second Amendment jurisprudence no longer permits a finding that the "assault weapons" ban is constitutional based on the findings that the Second Circuit already made regarding Connecticut's "assault weapons" ban in *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 254-55 (2d Cir. 2015).

As to Defendant Edward M. Lamont, Jr., it is undisputed that he is the governor of Connecticut. Dkt. 13, ¶ 35. The Plaintiffs alleged that, as governor, he has a constitutionally mandated duty to ensure that Connecticut laws, including the "assault weapons" ban, are faithfully executed under Article IV, § 12 of the Connecticut Constitution. *Id.* at ¶ 35. As part of that duty, Lamont supervises Defendant James Rovella, the Commissioner of Connecticut's Department of Emergency Services and Public Protection ("DESPP"). *Id.* at ¶ 36. Defendant

Rovella oversees the Connecticut State Police, which is responsible for investigating and initiating prosecutions for violations of Connecticut law. *See* Conn. Gen. Stat. § 29-7. Defendant Rovella also possesses significant regulatory and administrative authority over Connecticut's "assault weapons" prohibitions. *Id.* at ¶ 36.

Defendant Griffin is Connecticut's Chief State's Attorney – a fact that is undisputed. *Id.* at ¶ 37. In that role, and as head of the Connecticut Division of Criminal Justice, Griffin oversees all state prosecutors, and wields the power to sign warrants, charging documents, and applications for grand jury investigations, and he supervises all appellate, post-trial, and post-conviction proceedings for criminal matters in Connecticut. *Id.* at ¶ 37. This authority extends to prosecuting individuals who violate Connecticut's "assault weapons" ban. *Id.* at ¶ 37.

Defendants Kelly, Applegate, Corradino, Shannon, Gailor, Watson, Ferencek, Gedansky, Platt, and Mahoney, are the State's Attorneys responsible for every Connecticut jurisdiction in which the individual Plaintiffs do not reside. *Id.* at ¶¶ 38-44, 47-50. Each Defendant is required by law to prosecute crimes within their respective jurisdiction, including violations of Connecticut's "assault weapons" ban. *Id.* at ¶¶ 38-44, 47-50.

The Plaintiffs will supply additional facts as needed below.

## **LEGAL STANDARD**

The Plaintiffs acknowledge that they bear the initial burden of establishing the Court's subject matter jurisdiction by a preponderance of the evidence. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Dkt. 29-1, p. 2. In deciding a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff[s]." *Raila v. United States*, 355 F.3d 118,

119 (2d Cir. 2004). Dismissal "is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Id.*

District courts also enjoy procedural leeway on motions to dismiss for lack of subject matter jurisdiction. *Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56 (2d Cir. 1981). "The court may determine the motion on the basis of affidavits alone; it may grant discovery; it may conduct a preliminary hearing on the merits." *Id.* at 58.

## ARGUMENT

To avail themselves of the *Ex Parte Young* exception to the Eleventh Amendment, the Plaintiffs must show that the Defendants, as state officials, "have a connection with the enforcement of the act…" that Plaintiffs complain is unconstitutional. 209 U.S. 123, 154 (1908). So long as there is such a connection though, the law at issue does not need to note the officer's enforcement duties. *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 373 (2d Cir. 2005). Personal involvement is also not necessary in an official capacity suit under *Ex Parte Young*. *See Reynolds v. Blumenthal*, 2006 WL 2788380, at * 8 (D. Conn. 2006).

### I. Defendant Lamont Is a Proper Party Under *Ex Parte Young*.

The Defendants argue that Defendant Lamont is not a proper party because his connection to the enforcement of the "assault weapon" ban is strictly based on the Connecticut Constitution's charge that he "take care that the laws be faithfully executed…." Conn. Const., Art. IV, § 12. They cite copious caselaw from Connecticut district courts to try to justify their position. Dkt. 29-1, pp. 5-6. Their argument, however, misses the mark because it ignores facts of which the Court can take judicial notice, and which demonstrate that Lamont is no mere bystander to the enforcement of the "assault weapons" ban.

At the outset, Defendant Rovella serves at Lamont's pleasure, and reports directly to Lamont. Dkt.1, ¶ 36; *see also* Conn. Gen. Stat. § 29-2 (requiring that Rovella report annually to Lamont). Lamont also possesses the power to appoint or remove Rovella at will pursuant to Conn. Gen. Stat. §§ 4-5 – 4-8, 4-11 – 4-12, 29-1r. This supervisory scheme gives Lamont the power and authority to evaluate whether Rovella has materially neglected his duty or has shown material incompetence in the conduct of his official position. Conn. Gen. Stat. § 4-12. Comfortably and necessarily fitting within this power and discretion is Lamont's power to evaluate whether Rovella is properly enforcing the "assault weapons" ban.

Lamont has just recently demonstrated that he takes this responsibility seriously. On January 26, 2023, Lamont publicly announced a series of his own legislative initiatives in which Lamont characterizes "others"[1] as illegal "assault weapons." *See* Dkt. 28-2. Lamont's proposals sharply disagree with the statements released by Rovella's Department of Emergency Services and Public Protection ("DESPP") purporting to represent the current classification of "others." Lamont's proposals also diametrically contradict Rovella's interpretation and enforcement of the "assault weapons" ban. The only fair reading of Lamont's position is that he disagrees with Rovella's pronounced interpretation and enforcement of Connecticut law, but that Lamont wants to delay this action long enough that the General Assembly will do his political work for him, so he does not face a backlash for confiscating tens of thousands of lawfully owned firearms.

---

[1] A firearm is considered an "other" because it does not meet the statutory definition of "rifle," "shotgun," or "pistol" under Connecticut law. *See* Conn Gen Stat. Sec. 53a-3(16)-(18).

Even Lamont's political calculations are subject to shifting winds and tides. On January 31, 2023, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") classified "others" as "rifles" or "short-barreled rifles," which, in turn, placed Connecticut "other" owners, including the Plaintiffs, at immediate risk of being prosecuted for possessing firearms that, mere minutes before, were legally owned. *See* Dkt 28-1, pp. 6-8 (explaining the impact of the ATF rule). The ATF then announced to Connecticut residents that their "others" were "assault weapons" under Connecticut law and that, unlike virtually all other Americans, Connecticut residents would not be permitted to comply with the new ATF rule to make their "others" legal. *See* Dkt 28-1, p. 7 and cited exhibits.

Within days of the ATF rule, Plaintiffs filed an emergency motion for *ex parte* relief via a temporary restraining order. Dkt. 28. That motion also sought a preliminary injunction on an emergency basis. Dkt. 28. Five days later, Defendant Rovella's office countered with a memorandum to the public (colloquially referred to as the "SLFU memo") stating that DESPP was not interpreting "others" to be "assault weapons" under Connecticut law, "at this time." *See* **Exhibit A**.

Defendant Lamont, however, has not endorsed Rovella's SLFU memo in his representations to the Court regarding a motion for extension of time. Dkt. 31, p. 2. In fact, the Defendants' representations to the Court on that front are completely bare of any statement from Defendant Lamont that he accepts this position, even in the present time and space. Additionally, the Defendants have refused to provide any assurances on the record about their future interpretation and/or the Plaintiffs regarding enforcement of the "assault weapons" ban. Dkt. 31, p. 2.

These facts plainly establish jurisdiction if the Court also notes that Lamont has a long and storied history of broadly exercising his executive authority to create laws and suspend the execution of other laws. *See, e.g.*, *CCDL, Inc. v. Lamont*, 6F.4th 439 (2d Cir. 2021); *Casey v. Lamont*, 338 Conn. 479 (2021). Lamont's prior acts and judicial endorsements of those acts have set the stage for him to act again when it comes to the enforcement of the "assault weapons" ban. Lamont could simply and easily issue an executive order tomorrow directing Rovella to treat "others" as "assault weapons" under existing Connecticut law. Rovella would have no choice but to comply or face removal. Lamont's recent public pronouncements that "others" are "assault weapons," and his refusal to make any representations that he will not take action to enforce that interpretation, makes this scenario a distinct, and indeed likely, possibility.

The nature of Lamont's representations or distinct lack thereof to the Court, and his current efforts to make the "assault weapon" ban even more onerous to the Constitution, establish the requisite connection necessary for the Plaintiffs to successfully invoke the *Ex Parte Young* exception. In the alternative, the Court should at least give the Plaintiffs the opportunity to pursue discovery to establish additional facts regarding Lamont's connection with the enforcement of the "assault weapons" ban.

## II. Defendant Griffin Is A Proper Party Under *Ex Parte Young*.

The Defendants functionally ask the Court to adopt a new and unsupported Eleventh Amendment standard with respect to the Plaintiffs' claims against Defendant Griffin – Connecticut's Chief State's Attorney: i.e., "a special duty to enforce" standard. Dkt. 29-1, p. 6. Their claim that he is merely an administrative figurehead falls short though – a fact borne out both by statute and by the Defendants' own representations to the Court.

Conn. Gen. Stat. § 51-276 establishes a Division of Criminal Justice within Connecticut's Executive Department and places it in charge of the investigation and prosecution of all criminal matters in the Superior Court. Sec. 51-276 also reserves all management authority to the division except for the appointment of state's attorneys.

Conn. Gen. Stat. § 51-279 charges the Chief State's Attorney with administering, directing, supervising, coordinating, and controlling the operations, activities, and programs of the division. Among Defendant Griffin's responsibilities are to "establish guidelines, policies, and procedures for the internal operation and administration of the division which shall be binding on all division personnel." Conn. Gen. Stat. § 51-279(a)(3).

A fair reading of these provisions in the context of the Chief State's Attorney's appellate responsibilities in criminal matters shows that the Chief State's Attorney has the authority and the duty to establish binding, internal interpretations of Connecticut criminal law so that the law is applied uniformly across the state. In their Motion for Extension of Time to reply to the Plaintiffs' Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction, the Defendants did everything but explicitly confirm this state of affairs. Dkt. 31, p. 2. Instead of representing that each of the individual State's Attorneys adopted Defendant Rovella's position in the SLFU memo regarding "others," the Defendants represented that "the Division of Criminal Justice has taken the same position as DESPP as to this issue…." *Id.* at 2.

As Chief State's Attorney, it was Griffin's job, and no one else's, to establish that division-wide position, and to bind the Division of Criminal Justice and the individual State's Attorneys to it. Defendant Griffin's establishment of a binding internal policy regarding the

8

interpretation of the ATF rule and the enforcement of the "assault weapons" ban, squarely contradicts the Defendants' assertion that Griffin is a mere administrative figurehead.

Defendant Griffin's actions in establishing a binding interpretation of the "assault weapons" ban for the Division of Criminal Justice is a sufficient connection to its enforcement for the Plaintiffs to avail themselves of the *Ex Parte Young* doctrine and for the Court to hold that Defendant Griffin is a proper party in this action.

### III. Defendants Kelley, Applegate, Corradino, Shannon, Gailor, Ferencek, Gedansky, Platt, and Mahoney Are Proper Parties Under *Ex Parte Young*.

The Defendants' claim that Defendants Kelley, Applegate, Corradino, Shannon, Gailor, Ferencek, Gedansky, Platt, and Mahoney (hereinafter, "the moving State's Attorneys") are improper defendants fails on two fronts. First, it fails to acknowledge that part of each State's Attorney's job is to prosecute violations of the "assault weapons" ban within their respective geographic area, including violations within those geographic areas by any one or more of the Plaintiffs. Second, the Defendants do not challenge Plaintiffs Connecticut Citizens Defense League's ("CCDL") and the Second Amendment Foundation's ("SAF") standing to bring associational claims on behalf of their multiple members who reside in every judicial district in Connecticut.

With respect to the first issue, it does not take great leaps of logic to infer from the Complaint that the individual Plaintiffs and other members of CCDL and SAF intend to carry/bear/bring/transport their "others" when they leave their houses and travel within the moving State's Attorneys' districts. Dkt. 13, ¶ 101. No meaningful dispute can exist that, if any of the individual Plaintiffs, or any CCDL or SAF member, is apprehended in possession of an illegal "assault weapon" in any of the moving State's Attorneys' districts, the respective moving

9

State's Attorney would prosecute that Plaintiff or member without hesitation or regard for the judicial district in which they lived. Prosecution would initiate in the judicial district in which the Plaintiff is found with an "assault weapon," not in the district in which the Plaintiff lives.

Thus, there is no lack of a connection between the Plaintiffs' desired course of conduct and the moving State's Attorneys' enforcement of the "assault weapons" ban.

The second issue proves even less helpful to the Defendants' motion. They have raised no challenge to CCDL's and SAF's representative capacity claims. CCDL, in particular, has over 41,000 members mostly dispersed throughout Connecticut. CCDL could safely produce members who live in every judicial district in Connecticut if called upon to do so. SAF fares no worse with respect to its Connecticut members. These members are clearly subject to the moving State's Attorneys' enforcement of the "assault weapons" ban.

Thus, the Defendants' argument that there is an insufficient connection between the Plaintiffs and the moving State's Attorneys, lacks factual or legal basis.

## **CONCLUSION**

For the foregoing reasons, this Court has subject matter jurisdiction over the Plaintiffs' claims against each and all of the named Defendants. The Plaintiffs respectfully ask the Court to deny the Defendants' Motion to Dismiss in its entirety.

| | |
|---|---|
| Dated: March 1, 2023 | Respectfully submitted, |

    *//s//   Doug Dubitsky*
Doug Dubitsky, Esq.
(ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.933.9495
Facsimile: 866.477.1120
Email: doug@lawyer.com

    *//s//   Craig C. Fishbein*
Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
Facsimile: 203.294.1396
E-mail: ccf@fishbeinlaw.com

    *//s//   Cameron L. Atkinson*
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Facsimile: 203.672.6551
Email: catkinson@atkinsonlawfirm.com

*Attorneys for the Plaintiff*

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Doug Dubitsky /s/