UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDDIE GRANT, JR., *et al* | : | CIVIL NO. 3:22-CV-01223 (JBA) |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| LAMONT, *et al.,* | : | |
| *Defendants*. | : | MARCH 10, 2023 |

## <u>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER (DOC. #28.)</u>

Pursuant to this Court's order of March 3, 2023, Defendants respectfully respond to Plaintiffs' Emergency Motion for a Temporary Restraining Order (TRO). This Court should deny Plaintiffs' requested TRO because the Court lacks jurisdiction[1] to enter it. Specifically, Plaintiffs do not have standing to request the TRO because they have not and cannot meet their burden to demonstrate that they face any credible threat of prosecution. Further, Plaintiffs' claim regarding so-called "others" is not ripe because it is contingent on future events that have not and will likely never happen. Finally, even if Plaintiffs' TRO claim was justiciable, this Court would still lack jurisdiction because the Eleventh Amendment bars it due to a lack of an ongoing violation of federal law.[2]

---

[1] Pursuant to this Court's order during the status conference of March 3, 2023, Defendants only address the jurisdictional defects with Plaintiffs' requested TRO in an effort to avoid the costly and likely unnecessary discovery that would be required to respond to the substance of Plaintiffs' TRO claim. Defendants reserve the right, as ordered by the Court, to address the substance of Plaintiffs' TRO claim if this Court does not dispose of the TRO on jurisdictional grounds.

[2] Further, as asserted in Defendants' motion to dismiss, the Eleventh Amendment bars any claims—including those set out in the TRO—against Defendants Lamont, Griffin, Kelley, Applegate, Corradino, Shannon, Gailor, Ferencek, Watson, Gedansky, Platt, and Mahoney, because they are not proper parties to this action. (See Doc. # 29.)

## I.       BACKGROUND

On February 3, 2023, Plaintiffs filed their Motion seeking "an emergency, *ex parte*, Temporary Restraining Order ordering the Defendants and their subordinates to refrain from enforcing Connecticut's 'assault weapon' ban in regard to any firearm previously designated as an 'other,' and a Preliminary Injunction, upon an expedited opportunity for Defendants to be heard, enjoining the Defendants and their subordinates from enforcing Connecticut's 'assault weapon' ban." (Doc. #28-1 at 3.)  On March 3, 2023, Plaintiffs clarified that, with regard to the TRO, they are only seeking the relief articulated in paragraph 2 of their Motion:

> [T]he Plaintiffs ask the Court to issue a temporary restraining order enjoining the Defendants from treating firearms that have been considered legal "others" under Connecticut law as "assault weapons" until the Court can determine the merits of their application for a preliminary injunction.

(Doc. #28 at 2.)

Plaintiffs' claimed "emergency" is a change in how the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) has classified so-called "others" or "other firearms." Such weapons do not meet the Connecticut statutory definition of either a pistol, a rifle, or a shotgun, and therefore do not meet the statutory definition of an "assault weapon" pursuant to Conn. Gen. Stat. §§ 53-202a-c.  Plaintiffs claim that ATF's new designation of such weapons as "short-barreled rifles"—pursuant to a January 31, 2023, amendment to 27 C.F.R. 479.11—places them at risk of being prosecuted under Connecticut's assault weapons law, despite the fact that there has been no change to Connecticut's statutes regarding so-called "others."  However, there is nothing in the relevant statutes tying the definition of "assault weapon" to federal regulations or actions by federal agencies, including the ATF.

On February 8, 2023, the Department of Emergency Services and Public Protection's (DESPP) Special Licensing and Firearms Unit (SLFU) issued a memo regarding the ATF's new

final   rule   and   published   it   publicly   on   its   website.   https://portal.ct.gov/-
/media/DESPP/SLFU/ATF-Final-Rule-Memo_2-8-23_Final.pdf.   (See also Attachment A to
Exhibit 1.)  The memo explained that those who lawfully possessed a "CT-Other in its original
configuration as of 1-31-2023" were not "in violation of the Connecticut assault weapon ban."  On
February 9, 2023, the undersigned provided a link to this memo to Plaintiffs' counsel.   The
undersigned further represented that the Division of Criminal Justice has taken the same position
as DESPP as to this issue, meaning neither Plaintiffs nor anyone else in Connecticut is now, or has
ever been, considered to be in violation of state law due to the new ATF rule.  (See also Exhibits
1 & 2.)  Defendants told Plaintiffs they believed this resolved the TRO issue.  Plaintiffs disagreed
despite this information and these representations, claiming that they did not get adequate
"assurance" that they would not be prosecuted, notwithstanding the fact that the plain text of Conn.
Gen. Stat. §§ 53-202a-c does not now, nor has ever, applied to so-called "others."

Plaintiffs have no basis to assert they are under any threat of prosecution. Plaintiffs do not
argue, nor could they, that the plain text of the statute applies to "others," which are not defined or
even mentioned in the General Statutes.  (See Doc. #28-1 at 2[3].)  Instead, Plaintiffs' primary basis
for their "fear" is that on January 26, 2023—six days prior to the new ATF rule that supposedly
precipitated this claimed "emergency"—"[Governor] Lamont issued a press release indicating his
intent to criminalize the possession of 'others' in Connecticut."  (Doc. #28-1 at 6.)

Critically, the press release in question underscores Plaintiffs' lack of standing and want of
any actual injury.  What this press release actually said was that Governor Lamont was submitting

---

[3] Plaintiffs' state: "'[o]thers' were legal in Connecticut and did not fall under the 'assault weapon' ban
because they were neither 'rifles,' 'shotguns,' nor 'pistols' – each of which (in the relevant configuration)
falls within the definition of 'assault weapon.' Until January 31, 2023, Connecticut residents, including
the Plaintiffs, lawfully owned and peaceably used tens of thousands of 'others.'"

"proposals he will introduce during the 2023 legislative session."  Regarding others, the release says:

> To close these loopholes, Governor Lamont **is proposing to expand the assault weapons ban** to include the following:…So-called 'other' weapons: This category includes those assault weapons in which manufacturers have made attempts to evade the 2013 law through a technical loophole. The 2013 law regulates only pistols, rifles, and shotguns. These are categories that are defined under Connecticut law and do not include all weapons. Several manufacturers are selling weapons specifically designed to fall into this loophole by having a barrel length longer than 12 inches to avoid classification as a pistol and a so-called 'pistol brace' on the back to avoid classification as a rifle.

(Doc. #28-2 at 2-3) (emphasis added).  In effect, Plaintiffs seek a TRO enjoining Connecticut's Governor from advocating for legislative change.

## II.    ARGUMENT

### A.    Plaintiffs bear the burden of demonstrating subject matter jurisdiction.

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).  "There is always a 'presumption against jurisdiction.'" *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 64 (2d Cir. 2012) (quoting *Miller v. United States*, 78 U.S. 268, 299, (1870)).  As such, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Carlone v. Lamont*, No. 21-871, 2021 U.S. App. LEXIS 32440, at *8 n.4 (2d Cir. Nov. 1, 2021) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *See Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 U.S. App. LEXIS 2011, at *4 (2d Cir. Jan. 26, 2023) (quoting *Marakova v. United States*,

4

201 F.3d 110, 114 (2d Cir. 2000)).  "A plaintiff must establish the court's jurisdiction with respect to each claim asserted."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

**B.      Plaintiffs' motion for TRO should be denied because they cannot prove that they have standing to pursue such relief.**

"The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue."  *Weisshaus v. Hochul*, No. 21-64-cv, 2022 U.S. App. LEXIS 32794, at *4 (2d Cir. Nov. 29, 2022) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l*, 790 F.3d 411, 417 (2d Cir. 2015)).  "The plaintiff must plausibly allege standing 'for each claim and form of relief sought.'"  *Id*. (quoting *Cacchillo v. Insmed, Inc*., 638 F.3d 401, 404 (2d Cir. 2011)).  "To establish standing to pursue injunctive relief, [a plaintiff is] required to allege plausibly 'a real or immediate threat of injury.'"  *Id*. at *4-5 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)).  "[S]peculation about future injury is insufficient to confer Article III standing."  *Id*.; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.") (citations and quotation marks omitted); *Young v. Goord*, No. 01 CV 0626 (JG), 2005 U.S. Dist. LEXIS 3641, at *38-39 (E.D.N.Y. Mar. 10, 2005) ("speculative, remote or future injury cannot be remedied by a court's injunctive powers.") (citing *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)).

"Article III standing 'serves to prevent the judicial process from being used to usurp the powers of the political branches.'"  *Martinez v. Malloy*, 350 F. Supp. 3d 74, 84 (D. Conn. 2018) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Controlled Air, Inc. v. Barr*, No. 3:19-CV-1420 (JBA), 2020 WL 979874, at *4 (D. Conn. Feb. 28, 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "Whether a claimant has standing is the threshold

question in every federal case, determining the power of the Court to entertain the suit." *Id.* (quoting *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 361 (2d Cir. 2003)).

"Determining that a matter before the federal courts is a proper case or controversy under Article III therefore assumes particular importance in ensuring that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society.'" *McNiece v. Connecticut*, No. 3:15-CV-1036 (MPS), 2016 WL 1118249, at *6 (D. Conn. Mar. 22, 2016), *aff'd*, 692 F. App'x. 655 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 334 (2017) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Id.* (quoting *Allen*, 468 U.S. at 750). Therefore, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Id.* (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' . . . . Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Martinez*, 350 F. Supp. 3d at 84 (quoting *Lujan*, 504 U.S. at 560-61 (citations omitted)).

Here, Plaintiffs assert injury based on a claimed threat of prosecution. Standing can only exist in such cases "where the circumstances render the threatened enforcement sufficiently imminent." *Adam v. Barr*, 792 F. App'x 20, 21 (2d Cir. 2019) (citations and quotations omitted); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or

enforcement"). "A sufficiently imminent injury can be established by plausible allegations that a plaintiff intends to engage in conduct proscribed by a statute, and 'there exists a credible threat of prosecution thereunder.'" *Id*. at 22 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014)). But "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 (1971).

"A credible threat is not established by 'imaginary or speculative' fears of prosecution." *Id*. (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (quoting *Babbitt*, 442 U.S. at 298)). "[T]he mere existence of a law prohibiting intended conduct does not automatically confer Article III standing." *Id*. (citing *Knife Rights*, 802 F.3d at 384 ("The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue.").

Here, Plaintiffs and the State agree that the relevant statutes do not apply to "others" under their plain text. The analysis ends there, because no one can plausibly allege—let alone prove by a preponderance of the evidence—that a "credible threat of prosecution" exists under a statute where the plain text forecloses such a prosecution. But even probing further, Plaintiffs still fail. They cannot prove, nor do they even allege, that they or anyone else were ever subject to such a prosecution or threatened with such a prosecution. *See Babbitt*, 442 U.S. at 298-99 ("When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court.") (citations and quotations omitted).

Merely alleging that one is afraid they might be prosecuted in the future is insufficient to establish jurisdiction in federal court. *See Children's Healthcare is a Legal Duty v. Deters*, 92

F.3d 1412, 1416 (6th Cir. 1996) (remanding for dismissal of claims against the state attorney general where he merely possessed general enforcement authority but "did not threaten to commence and was not about to commence proceedings against the plaintiffs, much less proceedings to enforce an allegedly unconstitutional act"); *Clark v. Stone*, 998 F.3d 287, 294-95 (6th Cir. 2021) (no standing for injunctive relief in pre-enforcement action where claims that plaintiffs would be subject to future prosecution were "simply too speculative to confer standing."); *see also Lyons*, 461 U.S. at 110 (holding that "speculative nature of [plaintiff's] claim that he will again experience injury as the result of that practice even if continued" was insufficient to confer standing to seek injunctive relief); *Johnson v. Carrasquilla*, No. 3:17-cv-1429 (MPS), 2018 U.S. Dist. LEXIS 176578, at *28-29 (D. Conn. Oct. 15, 2018) (dismissing claim for injunctive relief based on plaintiffs' fears they would be subject to future disciplinary proceedings for lack of standing because "the possibility of future proceedings against them is entirely speculative.").

Here, the state agencies actually tasked with enforcing these laws[4] have repeatedly represented that they do not interpret the relevant statues to apply to "others," nor could they, as the statutes themselves foreclose this.  These statements only further thwart Plaintiffs' quixotic attempt to obtain a TRO enjoining activity that has never and is not currently occurring.  *See Poe v. Ullman*, 367 U.S. 497, 507-08 (1961) (holding no jurisdiction in challenge to Connecticut statutes and stating "[i]t is clear that the mere existence of a state penal statute would constitute insufficient grounds to support a federal court's adjudication of its constitutionality in proceedings brought against the State's prosecuting officials if real threat of enforcement is wanting. If the

---

[4] Even assuming *arguendo* that Governor Lamont had actually said that "others" are assault weapons as that term is defined under Conn. Gen. Stat. §§ 53-202a-c, this *still* would not be enough to establish jurisdiction. As discussed in Defendants' motion to dismiss (Doc. # 29), Governor Lamont is not a proper party to this action and therefore any claims brought against him are barred by the Eleventh Amendment.

prosecutor expressly agrees not to prosecute, a suit against him for declaratory and injunctive relief is not such an adversary case as will be reviewed here . . . The fact that Connecticut has not chosen to press the enforcement of this statute deprives these controversies of the immediacy which is an indispensable condition of constitutional adjudication. This Court cannot be umpire to debates concerning harmless, empty shadows. To find it necessary to pass on these statutes now, in order to protect appellants from the hazards of prosecution, would be to close our eyes to reality.").

The best Plaintiffs can muster is to point to a statement by the Governor that he intends to propose legislation to *change* the relevant statutes in order to apply to "others." This statement actually offers further evidence that they lack standing. If the statutes currently applied to "others," there would be no reason to change the statutes through legislative action. Of course, Plaintiffs' speculation that some legislation in the future may entitle them to relief is no basis for relief today.

To the extent Plaintiffs' claim ATF's alleged refusal to register "others" as "short-barreled rifles," could constitute an injury, they are wrong. (Doc. #28-1 at 7[5].) "The Constitution requires that a plaintiff's alleged injury be fairly traceable to the defendant's conduct." *Liu v. United States Cong.*, 834 F. App'x 600, 604 (2d Cir. 2020); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976) ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

As it currently stands, Plaintiffs cannot establish injury, which means their requested TRO is not justiciable, and this Court must deny their Motion.

---

[5] Plaintiffs cite to Ms. Sullivan's affidavit for the claim that an alleged "information session" occurred where ATF officials indicated they would not register Connecticut "others" as "short-barreled rifles." Nothing about this appears anywhere in Ms. Sullivan's affidavit or anywhere else in Plaintiff's exhibits. But even if this were so, as articulated supra, this is insufficient to invoke this Court's jurisdiction.

### C.   Even if Plaintiffs could demonstrate injury based on speculation that the law or the position of Defendants might change, such a claim for injunctive relief is not ripe.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List*, 573 U.S. at 157 (quoting U.S. Const., Art. III, § 2). "To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question." *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 511 (2d Cir. 2014) (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013)).  Therefore, "[r]ipeness is a constitutional prerequisite to exercise of jurisdiction by the federal courts." *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Tesler v. Cacace*, 607 F. App'x 87, 88-89 (2d Cir. 2015) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

"Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688. "Constitutional ripeness, in other words, is really just about the first *Lujan* factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Id.* at 688 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).  "The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Kurtz*, 758 F.3d at 511 (quoting *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687).

Even if Plaintiffs could establish standing based on some hypothetical future where DESPP or the Division of Criminal Justice change their minds and begin to reinterpret the relevant statute—in contravention of the text and their previous practice—to include "others," such a claim

10

would not be ripe, also depriving this Court of jurisdiction.  Plaintiffs' implicit argument that Governor Lamont may order the Commissioner of DESPP to change his mind, in addition to being illogical and contrary to all available evidence, is a classic example of basing injury on a hypothetical future event that may never happen.  *See Boyle v. Landry*, 401 U.S. 77, 81 (1971) ("[T]he normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future.").  Plaintiffs' argument again crashes against the inescapable rocks of justiciability.  Their request for TRO is not justiciable and their motion must therefore be denied.

**D.**    **Even if Plaintiffs could demonstrate their request for a TRO was justiciable, it is barred by the Eleventh Amendment.**

Ultimately, what Plaintiffs seek from this Court is an injunction to prevent any arrests or prosecutions that may arise solely under the state penal code.  Such an injunction is barred by longstanding constraints on the federal judiciary premised on state sovereignty and the immunities that flow from that sovereignty.

"The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception."  *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019). The *Ex parte Young* exception "operates to end ongoing violations of federal law and vindicate the overriding federal interest in assuring the supremacy of the law . . . .  A plaintiff may invoke this exception provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Id.* (citations and internal quotation marks omitted).

"[C]ourts have not read *Ex parte Young* expansively."  *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010) (citing *Deters*, 92 F.3d at 1415).  "A plaintiff properly invokes the *Ex parte Young* exception only when state officials are 'actively violating federal law

11

or imminently threatening acts that the plaintiff challenges as unconstitutional.'" *Id.* (quoting *Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 188 (D. Conn. 2009)); *Deters*, 92 F.3d at 1415 ("Young does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute"). Indeed, *Ex parte Young* held, "individuals who, as officers of the state . . . *threaten and are about to commence proceedings*, either of a civil or criminal nature, to enforce against parties affected [by] an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." 209 U.S. 123, 155-56 (1908) (emphasis added); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992) (explaining that *Ex parte Young* permits injunctions against state actors only where their violations of state law are "imminent" and that "a conjectural injury cannot warrant equitable relief").

Plaintiffs have not and cannot claim an ongoing violation of federal law. Indeed, Plaintiffs cannot even claim a *past* violation of federal law related to so-called "others," which would itself be insufficient to invoke *Ex parte Young*. *See Knight v. N.Y. State Dep't of Corr.*, No. 18-CV-7172 (KMK), 2020 U.S. Dist. LEXIS 121797, at *20-21 (S.D.N.Y. July 10, 2020) ("Crucially, where the alleged violation has ceased, past wrongs 'do[] not justify an application of *Ex parte Young*.'" (quoting *Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003)).

Plaintiffs "cannot satisfy the requirements of *Ex parte Young* because [they have] failed to allege that the Commissioner [or other Defendants are] involved in an ongoing violation of federal law or [have] threatened an enforcement action that violates federal law." *Goodspeed Airport, LLC*, 632 F. Supp. 2d at 188. Far from meeting their burden to demonstrate Defendants have both "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty," Plaintiffs have shown the exact opposite. *Conn. Ass'n of Health Care Facilities, Inc. v.*

*Rell,* No. 10-CV-136, 2010 U.S. Dist. LEXIS 54649, 2010 WL 2232693, at *5 (D. Conn. June 3, 2010).  As was the case in *Goodspeed*, the Commissioner of DESPP and the Division of Criminal Justice have "explicitly stated that [they have] no such plans at this time" to enforce the relevant statutes against people who own "others." *Goodspeed Airport, LLC*, 632 F. Supp. 2d at 188. That forecloses Plaintiffs' attempt to invoke the *Ex parte Young* doctrine with regard to their TRO claim, depriving this Court of jurisdiction.

Plaintiffs' apparent argument that they need some assurance that this will not change in the future and that absent this they can invoke the jurisdiction of this Court, turns the analysis upside down and runs headlong into contrary authority.  *See id.* ("As *Morales* makes clear, the remote possibility that the Commissioner might decide to act . . . without more does not give rise to either an ongoing violation of federal law or an imminent threat of proceedings for purposes of securing equitable relief."); *see also Morales*, 504 U.S. at 382 ("[T]he prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury. . . . [A] conjectural injury cannot warrant equitable relief."); *Wang v. Pataki*, 396 F. Supp. 2d 446, 454 (S.D.N.Y. 2005) (dismissing claim on Eleventh Amendment grounds because although the plaintiffs "ha[d] suggested that the Attorney General might, at some future date, commence criminal proceedings against [them] for unlicensed operation of an [apartment information vendor] business," those allegations "fail because a wholly speculative threat of future prosecution is not actionable").

As for Plaintiffs' suggestion that ATF officials allegedly refusing to register "others" could allow for injunctive relief against Defendants, this argument is equally unavailing for purposes of *Ex parte Young* as it is for standing.  *See Collins v. City Univ. of N.Y.*, No. 21 Civ. 9544 (NRB),

2023 U.S. Dist. LEXIS 21587, at *11 (S.D.N.Y. Feb. 8, 2023) ("[T]he *Ex parte Young* doctrine only applies to suits against state officials….").

## III.   CONCLUSION

Plaintiffs' entire motion for TRO is based on their own suggestion that subjective and unfounded fears about prosecutions that have never and are not currently taking place can overcome constitutional limits on this Court's jurisdiction.  For the aforementioned reasons, they are wrong and their motion for TRO must be denied.

DEFENDANTS
Lamont et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: _____

_____
James M. Belforti
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Tel:  (860) 808-5450
Fax:  (860) 808-5591
Federal Bar No. ct30449
E-Mail:  james.belforti@ct.gov

By: *Janelle R. Medeiros*
Janelle R. Medeiros
Assistant Attorney General
Federal Bar No. ct30514
110 Sherman Street
Hartford, CT  06105
Telephone: (860) 808-5450
Fax No.: (860) 808-5591
E-Mail:  Janelle.medeiros@ct.gov

14

**<u>CERTIFICATION</u>**

I hereby certify that on March 10, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.

_____
James M. Belforti
Assistant Attorney General