# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDDIE GRANT, JR., JENNIFER HAMILTON; MICHAEL STIEFEL; CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; AND SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EDWARD M. LAMONT, JR., in his official capacity; JAMES ROVELLA, in his official capacity; PATRICK GRIFFIN, in his official capacity; MARGARET E. KELLY, in her official capacity; DAVID R. APPLEGATE, in his official capacity; JOSEPH T. CORRADINO, in his official capacity; SHARMESE L. WALCOTT, in her official capacity; DAVID R. SHANNON, in his official capacity; MICHAEL A. GAILOR, in his official capacity; CHRISTIAN WATSON, in his official capacity; JOHN P. DOYLE, JR., in his official capacity, PAUL J. NARDUCCI, in his official capacity; PAUL J. FERENCEK, in his official capacity; MATTHEW C. GEDANSKY, in his official capacity, MAUREEN PLATT, in her official capacity; ANNE F. MAHONEY, in her official capacity, <br><br> Defendants. | CIV. NO. 3:22-cv-01223-JBA <br><br> MARCH 17, 2023 <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION** |

The Plaintiffs respectfully submit this Reply to the Defendants' Response to their Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction. Throughout the Defendants' Response, they allude to representations they claim to have made about their interpretation of the law regarding "other" firearms.[1] Dkt. 36, p. 8-9. They

---

[1] A firearm that fits in the category of "any other firearm" or simply "other" is such because it is too long to be a pistol; has a rifled bore, so it is not a shotgun; and due to it having a wrist brace instead of a shoulder

**ORAL ARGUMENT REQUESTED**      1

pronounce that such statements should be conclusive against the Court issuing a Temporary Restraining Order. *Id.*. If the Defendants had actually made any such definitive representations – or if they do so now – the Plaintiffs would gladly withdraw their Motion for TRO. In fact, at the Court's March 3, 2023 scheduling conference, Plaintiffs' counsel offered to do exactly that if the Defendants would simply put their position on the record. The problem is, the Defendants never made any such representations on or off the record. Instead, they have made intentionally vague statements regarding the non-binding fidelity of some (but not all) of the Defendants to an unsigned memorandum written in the past tense by a non-party. The Defendants have flatly refused to state whether they will interpret "other" firearms as being rifles – notwithstanding the federal government's January 31, 2023 determination that "others" are rifles.[2] Such interpretation puts the individual Plaintiffs at immediate risk of prosecution.

While maintaining the pretense that the Defendants have made some sort of jurisdictional statement that they will prospectively not follow the ATF's determination and declare "others" to be rifles – which statement the Defendants have not made – they also ask the Court to employ the wrong standard of review in its jurisdictional analysis. This is fatal to their argument that the Plaintiffs lack standing, that Plaintiffs' claims are not ripe, and that the Eleventh Amendment bars jurisdiction.

---

stock, is not meant to be fired from the shoulder, so it is not a rifle. Since it is a firearm that is neither pistol, shotgun, nor rifle, it is an "other."

[2] In its January 31, 2023 final rule, the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") ruled that "others" with wrist braces are intended to be fired from the shoulder, and are therefore rifles. In the relevant configuration, that makes them "assault weapons" which are banned in Connecticut. An analogy would be if you had a tomato in a state where fruit is illegal. You are OK because everyone considers the tomato to be a vegetable. But then, the federal government recategorizes the tomato as a fruit, making your tomato illegal contraband in your state. The Plaintiffs here are simply asking the Court to temporarily restrain the state from prosecuting them while the Court determines if the state can constitutionally ban the Plaintiffs from possessing fruit.

## ARGUMENT

**I.     The Plaintiffs Have Article III Standing.**

The gravamen of the Defendants' standing challenge is Defendant's argument that since the Defendants do not currently interpret "others" to be "assault weapons," the threat of the Plaintiffs' prosecution for possession of "others" is imaginary and speculative. Dkt. 36, pp. 8-9. That argument's fatal flaw is that the Defendants' actual representations show compellingly that the threat is real and tangible. This Court has jurisdiction to issue a TRO.

To establish the injury required by Article III standing doctrine in a pre-enforcement challenge, plaintiffs must make <u>plausible allegations</u> that they <u>intend to engage</u> in a course of <u>conduct prohibited by statute</u>, but <u>arguably protected by a constitutional interest</u>, and that a <u>credible threat of prosecution</u> exists if they engage in that conduct. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). The inquiry depends on the particular circumstances at issue. *Id.*[3] The Court must accept all well-pled facts as true, and all reasonable inferences stemming from those facts in favor of finding the Court has jurisdiction. *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 353 (2d Cir. 2020).

Here, the Plaintiffs have credibly alleged by sworn affidavit that they own "others" and want to continue doing so. Dkt. 28-5, ¶¶ 15-18; Dkt. 28-6, ¶¶ 15-18; Dkt. 28-7, ¶¶ 15-18. Keeping and bearing that type of arm is conduct protected by the Second and Fourteenth Amendments to the United States Constitution. If the Plaintiffs have made the "plausible allegation" that such conduct is prohibited by statute, then a credible threat of prosecution

---

[3] Courts must also bear in mind that plaintiffs have a due process interest in avoiding prosecutions under vague criminal prohibitions. *See Knife Rights, Inc.* at 384 n.4 (compiling cases).

exists and the Plaintiffs have standing to seek a temporary restraining order. *Knife Rights, Inc.,* 802 F.3d at 384.

The classification of firearms as "others" is strictly a federal statutory and regulatory creation. *See* 18 U.S.C. § 921(a); 27 C.F.R. § 479.11. Connecticut's statutes do not contain such a classification. Instead, Connecticut's only statutory classifications of firearms are "rifles" (Conn. Gen. Stat. § 53a-3(16)), "pistols" (Conn. Gen. Stat. § 29-27), and "shotguns" (Conn. Gen. Stat. § 53a-3(17)). Thus, Connecticut has adopted the federal classification of "others," and allows their sale in Connecticut as a matter of enforcement policy. *See* Dkt. 36-1, Affidavit of James Rovella, p. 2, ¶ 10. Connecticut's statutory definition of a "rifle" is extraordinarily broad, and it is Connecticut's only statutory firearm classification that fairly encompasses "others." *See* Conn. Gen. Stat. § 53a-3(16) ("'Rifle' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder…"). Regardless of any differences between the federal and state definitions of "rifle," the new ATF rule determined that the wrist braces on "others" are actually shoulder stocks. Dkt. 28-9, pp. 3-5. Thus, "others" are designed or redesigned, made or remade, and intended to be fired from the shoulder. *Id.* Although the Conn. Gen. Stat. § 53a-3(16) appears to clearly encompass "others" with wrist braces, the Defendants insist that some of the Defendants have decided not to enforce the law "at this time." Dkt. 36-1; Dkt. 36-2. This begs the question: "When will the state start enforcing the law against the Plaintiffs?" This, at bare minimum, makes it impossible for the Plaintiffs to "confidently determine which such [firearms] defendants will deem proscribed ["assault weapons"], and [they do] not wish to risk prosecution." *Knife Rights, Inc.* 802 F.3d at 385.

The Defendants argue that the Plaintiffs are at no risk of prosecution and that they

4

should be comforted by the SLFU Memo. Dkt. 36, pp. 2-3. But that unsigned memo, allegedly drafted by an unidentified subordinate of Defendant Rovella, starts off with the legal disclaimer: "The information provided in this memo does not, and is not intended to, constitute legal advice. Instead, the information contained herein should be considered for general informational purposes only." Dkt 36-1, p. 3. The Plaintiffs are left to wonder what that means in reference to their possession of "others." Doubly confusing is the next sentence which reads: "The terms 'other' and 'CT-Other' firearms, as used in this memo, refer to their commonly used meaning and are used in reference to Connecticut law only." Dkt 36-1, p. 3. Given that Connecticut has no statutory category of firearms called "other" or "CT-Other," the supposed "guidance" in responses to "frequently asked questions from the field" cannot possibly be seen as an authoritative statement of the law upon which the Plaintiffs can rely to avoid prosecution, especially since those responses appear to directly contradict the plain text of Conn. Gen. Stat. § 53a-3(16) and the new ATF rule. Nor does the SLFU memo even hint at any official position of any of the Defendants going forward. Again, if the Defendants would simply state on the record that they will not enforce the "assault weapon" ban against possession of "other" firearms while the Plaintiffs' Motion for Preliminary Injunction is pending, the Plaintiffs' Motion for TRO would be unnecessary. It is only the Defendants' conspicuously evading that issue which makes the Plaintiffs' request for emergency relief necessary.

Beyond the inability to "confidently determine which such [firearms] defendants will deem proscribed ["assault weapons"]" (*Knife Rights, Inc.* 802 F.3d at 385), the SLFU Memo directly contradicts the new ATF Rule in a way that leaves the Plaintiffs at immediate risk of

5

prosecution.[4] To keep an "other" purchased before January 31, 2023, the ATF Rule requires owners of "others" to either register them with ATF under the National Firearms Act of 1934 as short barreled rifles, or to remove the wrist brace. Dkt. 28-9, pp. 4-5. ATF has stated that it will not accept registration applications from Connecticut residents due to the state "assault weapons" ban,[5] leaving the Plaintiffs with removing the wrist brace as their only legal option short of surrendering their firearms. However, the SLFU Memo (even if it were authoritative), and Defendant Rovella's affidavit, require an "other" to remain "in its original configuration" with the wrist brace installed, in order to remain legal in Connecticut. Dkt. 36-1, p. 2, ¶ 8; Dkt. 36-1, p. 3. The Defendants' refusal to clearly and authoritatively state that it will not enforce the "assault weapon" ban against "others" has jammed the Plaintiffs between a penal rock and a prosecutorial hard place. If they leave their "others" in their "original configuration," they will be in violation of federal law. If they remove the wrist braces, they will be in violation of the "guidance" in the SLFU Memo. The Court must step in to ensure Plaintiffs have a clear path to avoid legal jeopardy caused by state and federal governments enacting conflicting penal laws via competing extra-legislative memoranda.

The Defendants mock the Plaintiffs' citation to Defendant Lamont's press releases in which he states unequivocally that "others" are "assault weapons." Dkt. 28-2 at 3. Sadly however, those public statements are the most authoritative and forthcoming extant statements on the Defendants' position. At least the Plaintiffs know to whom Lamont's

---

[4] The ATF Rule took effect on January 31, 2023 and requires compliance by May 31, 2023.
[5] The SLFU Memo acknowledges that ATF is not currently accepting registrations (ATF Form 1s) for "others" from Connecticut residents. SLFU Memo, p. 2, ¶ 5. As of today, it appears ATF may be considering allowing registration by Connecticut residents, but that is anything but clear. Despite diligent inquiry, the Plaintiffs are unaware of any Connecticut resident who has received a registration from ATF for an "other."

statements are attributed, as opposed the unsigned and unattributed SLFU Memo. Lamont's statements contain far more than a mere legislative proposal; they are a statement of Connecticut's governor, leader of the Executive Branch, and the state official with ultimate authority to command the other Defendants by executive fiat to interpret "others" as "assault weapons." Dkt. 28-2. Conspicuously absent from any of the Defendants' representations or affidavits is any statement that Defendant Lamont will not do so going forward.

If Defendant Lamont's statement that the Defendants consider "others" to be "assault weapons" is not clear indicia of a credible threat of prosecutions on "other" owners sufficient to sustain standing, the words and omissions in the Defendants' affidavits confirm the threat. The Defendants are twisting themselves into pretzels before our very eyes with linguistic gymnastics to avoid saying they won't enforce the "assault weapons" ban against "others," while insisting they just said what they refused to say.

For example, Defendant Rovella states in his affidavit that "DESPP has never applied and is not currently applying Conn. Gen. Stat. §§ 53-202a-c to ban or criminalize possession of so-called 'others.'" Dkt. 36-1, ¶ 10. His statement, however, is completely devoid of any hint at what he and his subordinates will do tomorrow or while this case remains pending. Likewise, Defendant Griffin states "[t]he Division of Criminal Justice has never applied and is not currently applying Conn. Gen. Stat. §§ 53-202a-c to ban or criminalize possession of so-called 'others.'" Dkt. 36-2, ¶ 9. His statement too is completely bereft of any indication what he or his division intend to do going forward.[6] Yet, now the Defendants incredibly argue that

---

[6] The conflicting positions the Defendants have taken regarding Defendant Griffin's authority shows that his assurances, if he actually made any, are meaningless. In support of their Motion to Dismiss, the Defendants argued that Griffin has no supervisory authority to control or direct through uniform polices the prosecutorial decisions of the individual state's attorneys in the Division of Criminal Justice. *See* Dkt. 29-1, pp. 6-9. Now, in

7

we should ignore Lamont's flash of honest intent, and instead rely on Rovella's and Griffin's past-tense pronouncements to dispel the Plaintiffs' fears of future prosecution. Sorry, no.

In sum, the Plaintiffs state an injury that is fairly traceable to the Defendants' conduct and a credible threat of prosecution. The Defendants have repeatedly refused to state how they will handle "others" while this litigation remains. Defendant Lamont has already declared that he considers "others" to be "assault weapons" and now refuses to represent to the Court that he will not unilaterally exercise his executive power to command the Defendants to prosecute the Plaintiffs – a course of action well within his power. Thus, the Plaintiffs continue to stand in a position of the Defendants' making where they are law-abiding citizens today and likely criminals tomorrow depending on which way the political winds blow. The first notice they will have of their criminal status will be the handcuffs clicking around their wrists.

The Court should find it has jurisdiction, and issue a temporary restraining order.

## II.     The Plaintiffs' Claim for Injunctive Relief is Ripe.

The Defendants concede that their argument pertaining to ripeness is functionally a challenge to the "actual injury aspect of Article III standing." *See* Dkt. 36, p. 10. In the pre-enforcement context, ripeness does not require the Plaintiffs to demonstrate actual harm. *Nutritional Health Alliance v. Shalala*, 144 F.3d 220 (2d Cir. 1998). Instead, the Second Circuit uses a two-part test to determine (1) if the issues are fit for judicial review, and (2) the injury or hardship that would result to the parties from the withholding of judicial review. *Id.* at 225.

---

opposition to the Plaintiffs' Motion for TRO, the Defendants take the flip-side position that Griffin has the power to speak for and bind the individual state's attorneys who they have previously described as "independent constitutional officers. *Id.* at p. 7. These positions are directly contradictory. The Defendants offer no affidavits from the individual State's Attorneys who are defendants in this action, and they fail to show that the individual State's Attorneys will not prosecute the possession of an "other" under Connecticut's assault weapons ban.

To determine fitness for judicial review, courts "must examine… whether consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to [apply and/or] enforce the regulations." *Id.* at 225 (internal citations and quotation marks omitted, alterations in original). Here, it is quite clear that the actual enforcement of Connecticut's "assault weapons" ban against the Plaintiffs' possession of "others" would add nothing to the Court's consideration of the underlying legal issues. The legal arguments that the Plaintiffs would raise would be identical to the ones that they raise here – namely, that "others" are commonly possessed firearms in Connecticut and that the Defendants cannot meet their burden of showing that they are "dangerous and unusual" weapons under *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). Since these arguments require a purely legal analysis and the Plaintiffs have already presented the historical evidence the Court would consider, enforcement of the "assault weapon" ban against the Plaintiffs' possession of "others" would add nothing to the adjudication of this case. The Plaintiffs satisfy the first factor.

With respect to the injury or hardship that would result to the Plaintiffs from the withholding of judicial review, the Plaintiffs have already briefed the Court in detail as to their injuries. Dkt. 28-1, pp. 13-15. They have also discussed at length above why the Defendants' show a credible threat of prosecution. *See Navegar, Inc. v. U.S.*, 103 F.3d 994, 998 (D.C. Cir. 1997) (discussing how a credible threat of prosecution may ripen a pre-enforcement challenge for review). For these reasons, the Plaintiffs satisfy the second factor.

Thus, the Court should find that the Plaintiffs' Motion for a Temporary Restraining Order is ripe for adjudication.

**III.     The Eleventh Amendment Does Not Bar the Plaintiffs' Motion for TRO.**

The Defendants' assertion of Eleventh Amendment immunity largely reiterates the arguments they made to support their challenges to standing and ripeness. For the same reasons articulated above, those challenges fail. Likewise, to the extent that the Defendants based their assertion of Eleventh Amendment immunity on those arguments, it also fails.

To the extent that the Defendants argue that the Plaintiffs cannot claim an ongoing violation of federal law, the Eleventh Amendment does not compel the Plaintiffs to do so on a pre-enforcement challenge. The Plaintiffs' burden, as discussed above, is to show a credible threat of prosecution or enforcement – a fact that *Ex parte Young*, 209 U.S. 123, 155-56 (1908) acknowledges. That, the Plaintiffs have done, and they have extensively briefed why such prosecution or enforcement would violate the Second Amendment. Dkt. 28-1.

To the extent that the Defendants argue that the Plaintiffs have not demonstrated that the Defendants are willing to enforce the laws at issue, the Defendants' refusal to make an affirmative statement of future intent not to do so, while doing the linguistic pretzel dance in an attempt to appear as if they had made such a statement, demonstrate their willingness to enforce the "assault weapon" ban which will violate the Plaintiffs constitutional rights.

## CONCLUSION

For all of the aforementioned reasons and those stated in their original moving papers (Dkt. 28), the Plaintiffs respectfully ask the Court to issue a Temporary Restraining Order ordering the Defendants, and those under them, to refrain from enforcing Connecticut's "assault weapon" ban in regard to any firearm now or previously designated as "any other firearm" or an "other."

10

Dated: March 17, 2023

                              Respectfully submitted,

                              *//s//   Doug Dubitsky*
Doug Dubitsky, Esq.
(ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.933.9495
Facsimile: 866.477.1120
Email: doug@lawyer.com


                              *//s//  Craig C. Fishbein*
Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
Facsimile: 203.294.1396
E-mail: ccf@fishbeinlaw.com

                              *//s//  Cameron L. Atkinson*
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Facsimile: 203.672.6551
Email: catkinson@atkinsonlawfirm.com

*Attorneys for the Plaintiff*

## **CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Doug Dubitsky /s/