UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDDIE GRANT, JR., *et al.*<br><br>    *Plaintiffs*,<br><br>v.<br><br>EDWARD M. LAMONT, JR., in his official capacity, *et al.*,<br><br>    *Defendants*. | Civil No. 3:22-cv-01223 (JBA)<br><br><br><br>June 1, 2023 |

**RULING DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

This motion deals with a category of firearms referred to by both Plaintiffs and Defendants as "others" or "other firearms."[1] Conn. Gen. Stat. §§ 53-202a-c defines the term "assault weapon" for purposes of Connecticut's Assault Weapons Ban. (Defs.' Opp'n [Doc. # 36] at 2.) "Other firearms" is not a category of firearms defined in Conn. Gen. Stat. §§ 53-202a-c or elsewhere in Connecticut law; it is a term commonly used to refer to weapons which "do not meet the Connecticut statutory definition of either a pistol, a rifle, or a shotgun, and therefore do not meet the statutory definition of an assault weapon." (Defs.' Opp'n at 2.) While there is no formal definition of "others", according to Plaintiffs, "[a] firearm that fits in the category of 'any other firearm' or simply 'other' [in Connecticut] is [one that] is too long to be a pistol; has a rifled bore, so it is not a shotgun; and due to it having a wrist brace instead of a shoulder stock, is not meant to be fired from the shoulder, so it is not a rifle. Since it is a firearm that is neither pistol, shotgun, nor rifle, it is an 'other.'" (Pls.' Reply [Doc. # 40] at 1-

---

[1] *See* Pls.' Emergency Mot. for TRO and PI [Doc. # 28] at 6; Defs.' Opp'n [Doc. # 36] at 3; Defs.' Opp'n Ex. 1, Attachment A (Connecticut Department of Emergency Services and Public Protection referring to "CT-Other" firearms).

1

2 n.1). Both parties agree that weapons falling into this category of "others" have historically not been subject to prosecution under the Assault Weapons Ban, which criminalizes possession of "an assault weapon" as a class D felony under Conn. Gen. Stat. §§ 53-202c. (Pls.' Mot. at 6; Defs.' Opp'n at 3.)

Federal regulations, on the other hand, define the category of "any other weapon" for federal purposes under 26 U.S.C. § 5845(e) as

> as any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

On January 31, 2023, the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) published a rule clarifying that firearms equipped with "stabilizing braces" (also referred to as "wrist braces" or "pistol braces") are now classified either as "rifles" or "short barreled rifles" (depending on the length of the barrel) under federal law. (Pls.' Mot. at 2, 6-7) (citing Ex. H, Factoring Criteria for Firearms With Attached Stabilizing Braces.) Individuals owning these firearms may keep them under the ATF's new rule but must register them with the ATF. (*Id.*) In a public information session held by the ATF on January 31, 2023, the Plaintiffs assert that the ATF stated that it would not accept registration of such "other" firearms held by Connecticut residents because it now considered such weapons to be illegal under Connecticut law. (Pls.' Mot. at 7.) Defendants recognize this registration issue[2].

---

[2] *See* Defs.' Opp'n Ex. 1 [Doc. #36-1], Attachment A at 002 ("Due to the registration period for assault weapons being closed in Connecticut, we are diligently working with the ATF on what

Plaintiffs are all individuals who own "other" firearms and claim they fear prosecution by Connecticut officials following this new ATF rule expanding the federal definition of "rifle." (*Id.* at 8-12.)

On February 3, 2023, Plaintiffs moved for a temporary restraining order ("TRO") barring enforcement of Conn. Gen. Stat. §§ 53-202a, 53-202b, and 53-202c ("the Assault Weapons Ban"), and, in the alternative, sought to enjoin Defendants from treating firearms "that have been considered legal 'others' under Connecticut law as 'assault weapons' until the Court can determine the merits of their application for a preliminary injunction." (Pls.' Mot. at 2.) At a status conference held on March 3, 2023, Plaintiffs clarified that they are now only seeking a temporary restraining order on the alternative grounds laid out in paragraph 2 of their requested relief: an injunction against treating so-called "others" as prohibited "assault weapons."[3]

In their opposition to the TRO, Defendants argue that Plaintiffs lack standing because they have failed to demonstrate they face a credible threat of prosecution. (Defs.' Opp'n at 1.) Moreover, Defendants argue that the TRO is barred by the Eleventh Amendment because the Plaintiffs have failed to show that the Defendants are engaged in an ongoing violation of federal law or have threatened an enforcement action that violates federal law, necessary for a case to fall under the *Ex parte Young* exception to sovereign immunity. (*Id.* at 11-12.)

On February 8, 2023, the Connecticut Department of Emergency Services and Public Protection's (DESPP) Special Licensing and Firearms Unit (SLFU) released an official memorandum online regarding the ATF's new rule, which stated that those possessing a "CT-Other in its original configuration as of 1-31-2023" were not "in violation of the Connecticut

---

documentation would establish legal possession of an 'other' in order to obtain a tax stamp for any firearm deemed an SBR [short barrel rifle] under federal law.").
[3] The Court agreed to separate the jurisdictional and merits briefing on the TRO, given the significant additional effort anticipated to be necessary to brief the merits.

assault weapon ban." (Defs.' Opp'n Ex. 1, Attachment A.) Defendants state that they provided this memorandum to Plaintiffs' counsel and represented that the Division of Criminal Justice concurred with DESPP that the new ATF rule does not subject owners of "others" to prosecution by the state. (*Id.* at 2-3.) Defendants provide declarations from the DESPP Commissioner and Chief State's Attorney affirming their agreement with this position. (*See id.*, Exs. 1-2.) Defendants maintain that the ATF change in the definition of "rifle" has no effect in how *Connecticut* defines "rifle," and therefore there has been no change that would subject those possessing "others" to prosecution under Connecticut law. (Defs.' Opp'n at 2.) Plaintiffs maintain that a TRO enjoining prosecution for the possession of "others" remains necessary to protect Plaintiffs from the immediate risk of prosecution by the state.

I.  **Discussion**

Defendants challenge Plaintiffs' standing to bring this motion and argue that there is no credible threat of prosecution of those possessing "others" by Connecticut law enforcement officials, and that Plaintiffs' claims are premised on contingent events unlikely to occur. (Defs.' Opp'n at 1.)

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue." *Weisshaus v. Hochul,* No. 21-64-CV, 2022 WL 17256755, at *2 (2d Cir. Nov. 29, 2022). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Standing contains three elements. First, the plaintiff must have suffered an injury in fact . . . . Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61.

Defendants maintain that there can be no injury in fact because Plaintiffs face no credible threat of prosecution since the ATF rule change has no impact on Connecticut law and Connecticut officials have made clear their intention not to prosecute those such as Plaintiffs who possess "others." Plaintiffs respond that because the ATF rule determined that the wrist braces on "others" are actually shoulder stocks, and Connecticut law defines "rifle" to mean "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder," then such "other" firearms are now prohibited under Connecticut law. (Pls.' Reply at 4.)

Where injury is asserted based on claimed threat of prosecution, standing exists "where the circumstances render the threatened enforcement sufficiently imminent." *Adam v. Barr*, 792 F. App'x 20, 21 (2d Cir. 2019). "[T]he mere existence of a law prohibiting intended conduct does not automatically confer Article III standing." *Id.* at 22. Rather courts "consider the extent of [] enforcement in determining whether a credible threat of prosecution exists." *Id.* at 23. "The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue. A credible threat of prosecution, however, cannot rest on fears that are imaginary or speculative. Nor is it evident where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015).

Defendants maintain that because Connecticut law enforcement agencies have repeatedly represented that they do not consider Connecticut's Assault Weapons Ban to criminalize the possession of these "other" firearms – regardless of the rule change by the ATF, there is no credible threat of prosecution by the State. (Defs.' Opp'n at 7.)

Plaintiffs argue that while Defendants currently maintain that they are not treating "others" as illegal assault weapons, that does not preclude them from changing their minds in the future. But Plaintiffs' argument is based on a hypothetical change in enforcement

policy by the state which is the sort of "conjectural or hypothetical" claimed injury insufficient under *Lujan* to be "actual or imminent." *Lujan*, 504 U.S. at 560–61. Thus, the factual record here fails to demonstrate an actual or imminent threat of prosecution. This is confirmed by the DESPP memorandum, which repeatedly emphasizes that the ATF's action has no impact on Connecticut law. (*See* Ex. 1, Attachment A.) FAQ 1 states that "[w]hile the federal rule amended the definition of 'rifle' in such a way as to render a so called 'other' as a 'rifle' under federal law, the Connecticut definition of 'rifle' has not been amended." (*Id*.) FAQ 4 clarifies that "[t]he ATF rule change does not make any substantive changes to Connecticut state law" and FAQ 6 states that "[t]he new ATF Final Rule has no effect on present Connecticut firearms law." (*Id.*) Moreover, in his sworn affidavit, DESPP Commissioner James Rovella affirms that "[t]he ATF regulatory rule did not amend or alter Connecticut law." (Defs.' Ex. 1, ¶ 7.)[4]

Similarly, Chief State's Attorney Patrick Griffin declares in his affidavit that "[t]he ATF regulatory rule did not amend or alter Connecticut law." (Defs.' Ex. 2, ¶7.)[5] FAQ 5 of the DESPP memo states that "the ATF Final Ruling does not have any effect on Connecticut law *at this time*" (emphasis added). While Plaintiffs argue this phrase implies an intention to shift enforcement policy in the future, the broader context of the memo does not support that this

---

[4] Plaintiffs maintain that the DESPP memo is irrelevant because it is unsigned and states in a disclaimer that it does not constitute legal advice. (Pls.' Reply at 4-5.) But Plaintiffs provide no support for the argument that the lack of signature or the disclaimer prohibit consideration of the document in determining whether there is a credible and imminent threat of prosecution faced by Plaintiffs.

[5] Defendants' Motion to Dismiss argues that Griffin lacks the authority to control or direct the prosecutorial decisions of individual state's attorneys, which Plaintiffs view as in tension with the notion that his declaration here can credibly commit the Division of Criminal Justice to a position that those with "others" will not be prosecuted. (Pls.' Reply at 7-8. n. 6.) However, conjecture that individual State's Attorneys will take a position contrary to the Chief of the Division of Criminal Justice, without any evidence of intent to do so, is too speculative to show that Plaintiffs face a credible and imminent threat of prosecution.

is the case, given the repeated emphasis that the ATF rule has no bearing on Connecticut law. Plaintiffs offer no authority that the mere possibility of an enforcement policy change in the future is sufficient to constitute a credible threat of enforcement. To the contrary, pre-enforcement claims have been dismissed on standing grounds for lack of a credible enforcement threat even where the conduct in question is unambiguously criminalized by statute, simply because authorities are currently choosing to limit enforcement. *See Adam,* 792 F. App'x at 21. For example, in *Adam*, a plaintiff filed suit against various federal agencies based on criminalization of cannabis under the Controlled Substances Act; the Second Circuit found a lack of standing, based on the absence of enforcement activities against possession of cannabis notwithstanding its status as a controlled substance. *Id.* at 21-23.

Plaintiffs rely on press statements from the Governor supporting legislation to expand the Assault Weapons Ban to include "others" as evidence of a credible threat of prosecution. (Pls.' Mot. at 6; Pls.' Ex A.) Defendants maintain that the Governor's position confirms their view that "others" are currently deemed legal by Connecticut law enforcement authorities. Indeed, the Governor's press release cited by the Plaintiffs expressly states that "others" are legal due to the Assault Weapons Ban regulating only "pistols, rifles, and shotguns" as those categories are defined "under Connecticut law." (Defs.' Opp'n at 9.)

Plaintiffs rely on two cases of pre-enforcement injury in which the plaintiffs' fear of criminal prosecution was found to be sufficiently concrete to support their arguments; however, both are inapposite. In *Knife Rights*, which involved the criminalization of certain types of knives, there was a history of past enforcement against the plaintiff by the defendant. *Knife Rts., Inc.*, 802 F.3d at 384-85. In *Navegar, Inc. v. United States*, 103 F.3d 994, 999 (D.C. Cir. 1997), which involved restrictions on certain firearms, plaintiffs had already been visited by law enforcement authorities, and the law being challenged "in effect single[d] out the [plaintiffs] as its intended targets by prohibiting weapons that only the [plaintiffs] make." *Id.* at 1000. Here, by contrast, there is no evidence of any activity or intentions by Defendants to

prosecute Plaintiffs for their possession of "others," and Plaintiffs point to no enforcement activities by Defendants directed to prosecuting possession of "others."[6]

## II.    Conclusion

Plaintiffs' Motion for a Temporary Restraining Order is DENIED.[7] Defendants' opposition to Plaintiffs' Motion for Preliminary Injunction shall be filed within 21 days of this ruling, Plaintiffs' reply shall be filed 7 days thereafter.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of June, 2023

---

[6] To the extent Plaintiffs are injured by ATF's refusal to register "others" from Connecticut residents, this is not an injury traceable to the Defendants in this case, and so is not sufficient for standing. *See Liu v. United States Cong.*, 834 F. App'x 600, 604 (2d Cir. 2020) ("The Constitution requires that a plaintiff's alleged injury be fairly traceable to the defendant's conduct."). Plaintiffs also hypothesize in their reply that because the DESPP memo states that "others" are legal "*in their initial configuration*," (emphasis added) and the ATF now requires owners of "others" to either register their firearm with the ATF as short barreled rifles (which they cannot currently do because ATF is not currently allowing registration of Connecticut "others") or remove the wrist brace, Plaintiffs are stuck "between a penal rock and a prosecutorial hard place." (Pls.' Reply at 5-6.) This argument was only raised in Plaintiffs' reply and is insufficiently developed at this time to show a credible threat of enforcement.

[7] Because this Court finds a lack of standing, it is unnecessary to reach the question of Eleventh Amendment immunity.