UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDDIE GRANT, JR., JENNIFER HAMILTON; MICHAEL STIEFEL; CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; AND SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EDWARD M. LAMONT, JR., in his official capacity; JAMES ROVELLA, in his official capacity; PATRICK GRIFFIN, in his official capacity; MARGARET E. KELLY, in her official capacity; DAVID R. APPLEGATE, in his official capacity; JOSEPH T. CORRADINO, in his official capacity; SHARMESE L. WALCOTT, in her official capacity; DAVID R. SHANNON, in his official capacity; MICHAEL A. GAILOR, in his official capacity; CHRISTIAN WATSON, in his official capacity; JOHN P. DOYLE, JR., in his official capacity, PAUL J. NARDUCCI, in his official capacity; PAUL J. FERENCEK, in his official capacity; MATTHEW C. GEDANSKY, in his official capacity, MAUREEN PLATT, in her official capacity; ANNE F. MAHONEY, in her official capacity, <br><br> Defendants. | CIV. NO. 3:22-cv-01223-JBA <br><br> AUGUST 2, 2023 <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTION TO PLAINTIFFS' AMENDED MOTION FOR A PRELIMINARY INJUNCTION** |

John Adams famously said, "Facts are stubborn things, and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence." The facts and evidence adduced in this case remain inexorably stubborn for the Defendants. Despite their best efforts, the Defendants have failed to rebut the Plaintiffs' evidence demonstrating that modern sporting rifles and "others" are in common use for lawful purposes as defined by *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir.

1

2015), both in Connecticut and throughout the United States. Under the Supreme Court's standard set forth in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), to the exclusion of almost all other issues, that is the definitive factual inquiry in this action. The Defendants' failure to factually rebut the clear evidence of common use for lawful purposes dooms their opposition to the Plaintiffs' motion for a preliminary injunction.

Attempting to save their opposition, the Defendants seek to erect a number of procedural hurdles, and they ask the Court to adopt unprecedented legal standards that squarely contradict established Supreme Court and Second Circuit precedent. The Plaintiffs address each of these arguments in turn, and respectfully urge the Court to grant their amended motion for a preliminary injunction.

**I.     The Plaintiffs seek a prohibitory, not a mandatory, injunction.**

The Defendants mischaracterize the Plaintiffs' motion for a preliminary injunction as seeking a mandatory injunction, which would require the Plaintiffs to show a "clear or substantial likelihood of success" on the merits of their claims. Dkt. 59, pp. 7-10. Defendants argue that any injunction issued by the Court here would give the Plaintiffs all the relief that they seek at trial and would upend the status quo. The Defendant's argument, however, misinterprets well-established Second Circuit and Supreme Court decisions.

The Second Circuit has drawn a distinction between the standards used for prohibitory injunctions and mandatory injunctions, applying a heightened standard only to mandatory injunctions:

> In distinguishing between prohibitory and mandatory injunctions, we have noted that "[t]he typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo *by commanding some positive*

*act* ... [and] thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success."

*Mastrovincenzo v. City of New York*, 435 F.3d. 78, 89 (2d Cir. 2006) (internal citations omitted; alterations and emphasis in original).

The Second Circuit's cases are instructive on this distinction. In *Libertarian Party v. Lamont*, 977 F.3d 173 (2d Cir. 2020), the court found that the Libertarian Party had applied for a mandatory injunction because it sought an order directing Connecticut officials to place all nominated Libertarian Party candidates on the November 2020 ballot. Likewise, in *Wright v. Giuliani*, 230 F.3d 543 (2d Cir. 2000) the court found that five homeless individuals diagnosed with HIV or AIDs were seeking a mandatory injunction directing New York City officials to provide them with certain housing accommodations, maintain property security, and implement training for their personnel. In those cases, the Plaintiff sought to mandate the Defendant take some positive action.

Conversely, *Mastrovincenzo* held that a First Amendment challenge to a longstanding New York City law regarding the street vending of art sought a prohibitory injunction because it asked the district court to enjoin enforcement of the law – in other words, ordering the city officials *not to do something*. 435 F.3d at 89-90.

Here, as in *Mastrovincenzo*, the Plaintiffs have only asked the Court to enjoin the enforcement of Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23. Dkt. 51. They have not asked the Court to order the Defendants to take any positive act. Thus, the injunction the Plaintiffs seek is solely of the *Mastrovincenzo* prohibitory vintage, not the mandatory vintage.

The Defendants also argue that the Court should apply a heightened standard because the relief cannot be undone even if they prevail later in this case. Dkt. 59, pp. 7-8. A preliminary injunction, however, can easily be undone, and should that be the case, the Defendants could resume enforcing Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23. Dkt. 51. Thus, their argument lacks merit.

Finally, *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022) places the substantive burden on the Defendants to prove that Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23 have a well-established and representative historical analogue after the Plaintiffs show that the right they claim is protected by the Second Amendment's text. The Plaintiffs here have shown that their right is constitutionally protected, but the Defendants cannot meet their burden. Thus the Defendants seek to escape their burden by raising the procedural bar for the Plaintiffs. The Court should not acquiesce.

**II.     The Second Circuit Has Invalidated Discrete Portions Of Gun Control Statutes Subject To Pre-Enforcement Challenges Under The Severability Doctrine. Alternatively, The Court Should Apply The Overbreadth Doctrine.**

The Defendants ask the Court to find the Plaintiffs cannot show a likelihood of success on the merits because they bring a facial challenge to Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23, and claim at least some of its applications are constitutional. Dkt. 59, pp. 11-13. Precedent squarely forecloses this argument.

It is well-established that, if a provision of a law is found to be unconstitutional, there is a presumption that the unconstitutional provision is severable from the rest of the law. *See Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984). Thus, "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that

4

which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id.* at 653 (internal citations and quotation marks omitted). The Second Circuit has, in pre-enforcement cases, used severability to declare certain words in a statute unconstitutional based on their operative effect, while upholding the rest of the challenged statute. *See Carlin Communications, Inc. v. F.C.C.*, 837 F.2d 546, 560-61 (2d Cir. 1988).

The Second Circuit has even applied the severability doctrine to Connecticut's assault weapons ban. *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo* characterized challenges to sweeping New York and Connecticut gun control statutes as being pre-enforcement facial challenges: "Because plaintiffs pursue this pre-enforcement appeal before they have been charged with any violation of law, it constitutes a facial, rather than as-applied, challenge." 804 F.3d 242, 265 (2d Cir. 2015) (internal quotation marks omitted).[1] *Cuomo* found one provision in each of New York's and Connecticut's statutory schemes to be unconstitutional: New York's seven-round load limit and Connecticut's specific prohibition on the possession of Remington 7615 rifles. *Id.* at 269. Instead of denying the plaintiffs relief as to those unconstitutional provisions because they had brought pre-enforcement facial challenges to New York's and Connecticut's statutory schemes, *Cuomo* implicitly adhered to the doctrine of severability by striking the specific provisions while upholding the rest of the statutes.

The Plaintiffs ask the Court to follow the Second Circuit's approach in *Cuomo*. Under the *Cuomo* approach, the Court does not need to decide whether a grenade launcher, for

---

[1] While *Cuomo* did not discuss this characterization until it reached the plaintiffs' vagueness challenge at the end of its opinion, its characterization still applied with equal force to the analysis it conducted of the plaintiffs' Second Amendment claims. *Cuomo's* analysis of the plaintiffs' Second Amendment claims indisputably adhered to severability even though it never discussed it or its relationship to facial challenges.

example, is constitutionally protected as the Defendants suggest it must. Dkt. 59, p. 12. Instead, the Court can focus on the challenge that the Plaintiffs actually brought – the criminalization under Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23 of firearms commonly used for lawful purposes that the Defendants have labeled "assault weapons" and "weapons of war" to satiate political hysteria.

In the alternative, the Plaintiffs ask the Court to apply the overbreadth doctrine to Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23. In the First Amendment context, the Supreme Court has recognized a type of facial challenge "whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal citations and quotation marks omitted). It has described this overbreadth doctrine as striking a balance between competing social costs:

> On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects.

*United States v. Williams*, 553 U.S. 285, 293 (2008). [2]

Strong similarities exist between the First and Second Amendments. The First Amendment guarantees a right to free speech. The state may only limit that right within narrow categories of First Amendment exceptions, and the Supreme Court has recognized that the

---

[2] While the Supreme Court has not applied the overbreadth doctrine outside the First Amendment context and the Second Circuit has avoided the question of whether it applies in Second Amendment cases – *see Kachalsky v. County of Westchester*, 701 F.3d 81, 101 (2d Cir. 2012) – its application is particularly appropriate in the Second Amendment context for the same reasons that it is a well-established First Amendment doctrine.

right can only be enjoyed when it can be freely exercised without fear of punishment. *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984) (recognizing the chilling doctrine on the basis that people will refrain from engaging in protected speech if they might be punished for it). Likewise, the Supreme Court has recognized that the Second Amendment guarantees an individual right to bear arms that is presumptively protected unless the state limits it within narrow categories of Second Amendment exceptions. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2126 (2022). Just like the right to free speech, the right to bear arms cannot be enjoyed when it cannot be freely exercised without fear of punishment. Thus, when a state regulation chills the exercise of the Second Amendment right to bear arms, application of the overbreadth doctrine is appropriate.

The overbreadth analysis starts with defining the conduct that the law covers. *Stevens*, 559 U.S. at 474. Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23 criminalize the possession of countless firearms that are commonly used in the United States for self-defense – both by name and by widely popular features. The overwhelming majority of the firearms criminalized by the statute are neither dangerous nor unusual as discussed in the Plaintiffs' moving papers, thus entitling them to Second Amendment protection. These provisions' broad criminalization of countless constitutionally protected firearms far outnumbers any other application that they have. Thus, the Court should hold these provisions unconstitutional under the overbreadth doctrine.

### III. The Defendants' Suggestion That Plaintiff Michael Stiefel Should be Stripped of His Second Amendment Protections Is Legally Baseless.

That the Defendants have leveled the reckless and legally baseless accusation against Plaintiff Michael Stiefel, claiming that he has lost all of his Second Amendment rights by not

registering large capacity magazines (Dkt. 59, pp. 16-17 n.7) exemplifies why this Court must protect the Plaintiffs' constitutional rights against the unabashed violence to those rights by the Defendants in this action. The Defendants' argument is legally baseless and misrepresents Stiefel's deposition testimony to the point of being outright offensive.

During his deposition, Stiefel testified that he owned "large-capacity magazines" or magazines capable of accepting more than 10 rounds. Dkt. 59-10, pp. 23-26, 45-47, 50-52.[3] He stated that he had not declared them to the state of Connecticut prior to the deadline for doing so under Conn. Gen. Stat. § 53-202x. *Id.* Stiefel, however, testified that he has not had physical possession of those magazines in Connecticut since 2014 when he transported them out of state, to Pennsylvania. *Id.* at 50-52.

It is not a state or federal crime to own a magazine located in Pennsylvania while residing in Connecticut. The Defendants' authority and the authority of Connecticut law stops at the Connecticut border. Thus, while Stiefel owns large capacity magazines, he is not violating any Connecticut law by keeping them outside the state of Connecticut.

The Defendants' suggestion that a person somehow forfeits his Second Amendment rights because, nine years ago, he removed legally-purchased magazines from the state as soon as he became aware of that he was not permitted to keep them in-state is preposterous. Stiefel has been convicted of no crime. Even if he was in violation of a state law in 2014 when he removed the magazines from the state, possession of those magazines in Connecticut was a mere infraction, *see* Conn. Gen. Stat. § 53-202w(3)(b), and the statute of limitations on that

---

[3] Since the cited portion of Stiefel's deposition contains some redactions due to their confidentiality designations, the Plaintiffs also refer the Court to Dkt. 57, pp. 23-26, 45-47, 50-52.

8

infraction ran at least eight years ago. Conn. Gen. Stat. § 54-193(b). In the wake of *Bruen,* the Third Circuit just issued an *en banc* decision finding that even a convicted non-violent felon remains among "the people" protected by the Second Amendment. *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023). Yet, the Defendants, who include every state prosecutor in Connecticut, are advocating for striping a United States citizen of his constitutionally-guaranteed rights for life, premised on nothing but the allegation of a nine-year old infraction for which he was never charged or convicted. There is no basis in law or fact for the Court to conclude that he has violated any law, and the Defendants' allegations against him shows that these Defendants have no regard for the People's constitutional rights.

**IV.     The Defendants Ask The Court To Apply A Contrived "Unusually Dangerous" Standard Instead Of The "Dangerous And Unusual" Standard Mandated By The Supreme Court And The Second Circuit.**

Simply put, under *Bruen* and *Cuomo*, the Defendants do not prevail in this case. Despite their presentation of a voluminous record and briefing, they provide absolutely no evidence to contradict the statistical evidence presented by the Plaintiffs: modern sporting firearms (or "assault weapons") are in common use for lawful purposes in the United States and Connecticut. Period. Instead, the Defendants launch *ad hominem* attacks against the Plaintiffs' witnesses and accuse the Plaintiffs of misleading the Court. Dkt. 59, pp. 29 & 30-31, n.10 (accusing Mr. Fatohi of having a financial interest in this case without any evidence and characterizing Mr. Bevis's affidavit as misleading). The irony grows though. The evidence that the Defendants present actually supports the Plaintiffs' position under existing precedent. Thus, the Defendants ask the Court to disregard the plain language of *District of Columbia v. Heller*, 554 U.S. 570 (2009) and *Cuomo*'s express holding, and adopt a new "unusually

9

dangerous" standard that is merely a clumsy disguise for interest balancing specifically prohibited by *Bruen*. Dkt. 59, pp. 17-23; *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). The Court must reject their invitation.

*Cuomo* establishes that the Defendants bear the burden to show that the AR-15 platform firearms they are prohibiting the Plaintiffs from obtaining are not "in common use" ***and*** are not "typically possessed by law abiding citizens for lawful purposes." *Cuomo*, 804 F.3d at 254-55 (citing *Heller*, 554 U.S. at 625, 627). In *Cuomo,* the Second Circuit relied on conservative estimates showing that "assault weapons" constitute about 2% of the nation's firearms and held that such firearms were in common use for lawful purposes. *Id.* at 255.

The Defendants offer not a scintilla of evidence to contradict their own official data – that they produced to Mr. Ray Bevis – that "assault weapons" constitute approximately 4.1% of Connecticut firearms and "others" constitute approximately 6.8% - percentages which clearly exceed the 2% *Cuomo* threshold. Dkt. 51-3. Instead, they offer evidence that is even more favorable to the Plaintiffs, showing that AR-15 platform rifles constitute approximately 5% of privately owned firearms in the United States. Dkt. 59, p. 30. Nor do the Defendants dispute that approximately 24,446,000 modern sporting rifles have entered circulation in the United States. Dkt. 51-8. In fact, one district court has found modern sporting rifles to be more popular than the most popular pickup truck in America. *See Miller v. Bonta*, 542 F.Supp.3d 1009, 1022-23 (S.D. Cal. 2021) (vacated and remanded on other grounds).

Under *Heller* and *Cuomo*, this data is sufficient to show that AR-15 platform firearms cannot possibly be considered "unusual." If they are not "unusual," they cannot be found to

10

be "dangerous and unusual." Thus, the Plaintiffs prevail on the merits of their application for a preliminary injunction.

Since statistics are stubborn things, the Defendants advance an argument that "dangerous and unusual" really means "unusually dangerous." Dkt. 59, pp. 17-23.[4] If either *Heller* or *Cuomo* had established an "unusually dangerous" standard, those courts certainly would have said so. They did not. In particular, neither *Heller* nor *Cuomo* embarked on any analysis of the relevant characteristics of firearms under the "dangerous and unusual" standard, and Justice Alito, concurring in *Caetano v. Massachusetts*, explained that "the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." 577 U.S. 411, 418 (2016) (Alito, J., concurring). Instead, *Cuomo* focused on "typical possession" under the "dangerousness" prong of the analysis. *Cuomo*, 804 F.3d at 256-57. Thus, there is no support in the controlling precedents for the Court to apply the Defendants' contrived "unusually dangerous" standard.

## V. The Defendants' Unprecedented "Best Weapon" Standard Under The Typical Lawful Use Element Is Constitutionally Unsustainable.

The Defendants argue that the Plaintiffs' alleged inability to imagine hypothetical situations where an AR-15 platform firearm would be needed or more useful for self-defense

---

[4] Dangerous and unusual are two different concepts, both of which must be separately present for a given firearm to be exempted from Second Amendment protection. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). The Defendants, however, juggle and massage the words to derive the new combined concept of "unusually dangerous" with "unusual" no longer being a stand-alone concept, but simply a modifier of "dangerous." Their implication being that a firearm need not really be unusual at all to be exempt from protection, so long as it is sufficiently dangerous. That begs the question: is a firearm also exempt from Second Amendment protection if it is not at all dangerous, but is very unusual? An honest reading of *Heller* and *Cuomo* say no. The Supreme Court and the Second Circuit said what they said. No manner of linguistic acrobatics should be allowed to turn the precedential standard on its head.

than their current firearms shows that the typical use of AR-15 platform firearms is not for self-defense. Dkt. 59, pp. 27-28. They further cite studies showing that approximately 90% of self-defense incidents involve handguns instead of rifles. *Id.* at 26. These arguments, however, are constitutionally unsustainable, and frankly, irrelevant to the issues before the Court.

The Second Amendment's protections are not limited to those weapons that any given person subjectively feels is "best" for self-defense. *Caetano*, 577 U.S. at 420 (Alito, J., concurring).[5] It protects all bearable arms that are commonly used for lawful purposes like self-defense. *Id.* Thus, the relevant inquiry is not how often AR-15 platform firearms are used in self-defense or whether any given individual considers them "the best" weapons for self-defense, but rather whether people typically possess them for lawful purposes such as self-defense.

To adopt the "best weapon" standard would gut *Heller* and its progeny in flagrant disregard for the Second Amendment protections that they establish. Practically speaking, the Defendants "would be free to ban *all* weapons *except* handguns, because handguns are the most popular weapon chosen by Americans for self-defense in the home." *Id.* at 420 (Alito, J., concurring) (emphasis in original, internal quotation marks and citations omitted).

Furthermore, the Defendants' claim regarding the Plaintiffs' inability to describe specific situations where an AR-15 platform firearm would be more useful or effective for self-defense disregards the Plaintiffs' testimony describing AR-15 platform firearm features

---

[5] In *Caetano*, the Supreme Court found that stun guns (i.e., electronic defense weapons) are protected under the Second Amendment. *Caetano v. Massachusetts*, 577 U.S. 411, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016). If the Defendants' proposed "best weapon" standard were correct, then either the Supreme Court's decision in *Caetano* is wrong, or if stun guns are the "best weapon," then no firearms would be subject to Second Amendment protection. Under the Defendants' proposed "best weapon" standard, there is no third option.

that make them more useful and desirable for self-defense. For example, Plaintiff Grant testified in his deposition that AR-15 platform firearms can accept larger capacity magazines, that they have shorter barrels compared to other firearms, that they are more customizable to a person's unique preferences and body type, and that they have a lower recoil, thus making them more preferable to him for self-defense. Dkt. 59-9, 36-43, 99-100.[6]

Plaintiff Hamilton testified that she has used an "other" – an AR-15 platform firearm – within the last year in a self-defense situation. Dkt. 59-11, pp. 57-58. Additionally, Hamilton testified that she hunts with her "others." *Id.* at 58-63. Hamilton also described how an AR-15 platform firearm is preferable for her to use for self-defense because the stock gives her greater control over the firearm's recoil than she would have over an "other" or other firearms *Id.* at 68-69.

Likewise, Plaintiff Stiefel detailed why he believed that certain features make an AR-15 platform firearm superior for self-defense, citing its stock, his ability to customize it, lower recoil even compared to a pistol, the availability of a pistol grip, more stopping power and a shorter barrel length. Dkt. 59-10, pp. 53-64.[7]

The Plaintiffs' testimony – untethered from Defendants' vague hypotheticals – demonstrates how AR-15 platform firearms and "others" are well suited for self-defense and are preferable to the Plaintiffs for that purpose as they are for countless Americans. Thus, regardless of the statistics that the Defendants produce, they cannot overcome the similarities between the Plaintiffs and *Caetano*. Like *Caetano*, the Plaintiffs desire certain firearms that

---

[6] Plaintiffs' citations are to the page numbers established by the court reporter, not the ECF page numbers.
[7] *See also* Dkt. 57, pp. 53-64.

13

arguably are not the best weapon for every single situation and they acknowledged that. The Second Amendment, however, provides them with the freedom to choose a firearm, including an AR-15 platform firearm, that is not "dangerous and unusual" and is normally used for lawful purposes, including self-defense. Thus, the Court should reject the Defendants' argument for a "best weapon" standard.

## VI. The Defendants Provide No Historical Analogues To Their Criminalization Of AR-15 Platform Firearms.

The Defendants first argue that modern sporting rifles present an unprecedented technological advance that requires a more liberal use of analogies because of their capacity to kill numerous people quickly. Dkt. 59, pp. 32-37. They then argue that gunpowder storage and possession laws and laws regarding certain knives and percussion cap pistols are relevantly similar.[8] *Id.* at 38-44. Neither is anywhere close to the target.

First, the Defendants supply no laws or analogues demonstrating that private individuals were prohibited from owning or possessing cannon in the Founding Era. Instead, cannon were ubiquitous on private merchant ships, and some town militias possessed them. The Defendants also fail to provide any evidence that Gatling guns were banned from private possession during the Reconstruction period. The Defendants also do not present any evidence that revolvers or repeating rifles were banned after their introduction shortly before the Civil War. In other words, fast-shooting firearms and "weapons of war" have existed since the Founding Era, yet little to no steps were taken to regulate them until well into the twentieth century. Thus, a more liberal analysis is not merited.

---

[8] The Defendants' post-1900 history is entitled to no weight, and the Plaintiffs do not address it for lack of space. *Bruen*, 142 S.Ct. at 2136-2138.

Second, powder storage laws are inapposite. None of the storage laws cited by the Defendants imposed a categorical ban on the possession of either powder or firearms. Dkt. 59, pp. 38-39. Instead, the laws that they cite only gave city officials authority to regulate the safe storage of gunpowder and still permitted private citizens to possess large quantities of it if they stored it properly. Thus, the regulations are not relevantly analogous to the laws at issue here because those laws categorically and completely deprive the Plaintiffs of commonly used firearms.

Third, the Defendants' knife prohibition and percussion cap pistols laws argument fails for two reasons. At the time that these laws were enacted, neither percussion cap pistols nor the specific knives banned were in common usage. Instead, they were new weapons that were gradually becoming more popular unlike the AR-15 platform firearms (introduced to the public in the 1950s) that are now virtually ubiquitous throughout the United States. Additionally, the Defendants only supply laws from approximately five states between 1837 and 1873 banning these weapons. Dkt. 59, p. 42 n.14. Five states falls far short of the well-established and representative historical analogue required by *Bruen*.

## **CONCLUSION**

For all of the aforementioned reasons and those stated in their original moving papers (Dkt. 51), the Plaintiffs respectfully ask the Court to grant their motion for a preliminary injunction.

Dated: August 2, 2023	Respectfully submitted,

     *//s//   Doug Dubitsky*
Doug Dubitsky, Esq. (ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.933.9495
Facsimile: 866.477.1120
Email: doug@lawyer.com


     *//s//   Craig C. Fishbein*
Craig C. Fishbein, Esq. (ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
Facsimile: 203.294.1396
E-mail: ccf@fishbeinlaw.com

     *//s//   Cameron L. Atkinson*
Cameron L. Atkinson, Esq. (ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Facsimile: 203.672.6551
Email: catkinson@atkinsonlawfirm.com

*Attorneys for the Plaintiff*

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                                     //s//  *Cameron L. Atkinson ct31219*