UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDDIE GRANT, JR., *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> EDWARD M. LAMONT, JR., in his official capacity, *et al.*, <br><br> *Defendants*. | Civil No. 3:22-cv-01223 (JBA) <br><br><br><br> August 23, 2023 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

On February 8, 2023, Defendants moved to dismiss [Doc. # 29] claims in Plaintiffs' First Amended Complaint [Doc. # 13] against Defendants Governor Lamont, Chief State's Attorney Griffin, and 10 of the 13 State's Attorneys on grounds that they are improper parties under the Eleventh Amendment. (Defs.' Mem. [Doc. # 29-1] at 1.) Plaintiffs filed a Second Amended Complaint ("SAC") [Doc. # 48] on June 28, 2023 following Defendant Lamont signing into law Conn. Public Act No. 23-53, and the pending Motion to Dismiss is directed to this SAC.

**I.    Relevant Facts**

The Court assumes familiarity with the factual background of this case. (*See* Order Denying Mot. for TRO [Doc. # 41] at 3.) Plaintiffs Grant, Hamilton, and Stiefel ("the Individual Plaintiffs") reside in Meriden, Enfield, and Montville, Connecticut, respectively. (SAC ¶¶ 8, 18, 24.) Plaintiff Connecticut Citizens Defense League, Inc. ("CCDL") is a Connecticut non-profit that "has over 41,000 members and supporters nationwide, with more than ninety-five percent of its members and supporters being residents of Connecticut". (*Id.* ¶ 32.) Similarly, Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit that Plaintiffs represent has over 70,000 members, "including many members in Connecticut." (*Id.* ¶ 37.) The Individual Plaintiffs are all members of both CCDL and SAF. (*Id.* ¶¶ 36, 39.)

1

The Defendants are Governor Ned Lamont, Commissioner of the Department of Emergency Services and Public Protection James Rovella, Chief State's Attorney ("CSA") Patrick Griffin, and the thirteen individual State's Attorneys, each of whom is assigned a particular judicial district. (SAC ¶¶ 40-55.)

## II.     Legal Standard

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).[1] "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff[s]." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). In response to a motion to dismiss pursuant to Rule 12(b)(1), "plaintiff[s] asserting subject matter jurisdiction ha[ve] the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## III.    Discussion

Defendants argue that Plaintiffs' claims against Governor Lamont, CSA Griffin, and 10 of the 13 State's Attorneys are barred by the Eleventh Amendment.[2] "The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress

---

[1] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

[2] Defendants do not dispute that Commissioner Rovella and State's Attorneys Doyle, Walcott, and Narducci (who are responsible for the home judicial districts of the three Individual Plaintiffs) are proper defendants.

2

abrogates the state's immunity, or the case falls within the *Ex parte Young* exception." *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019).

Under *Ex parte Young*, to make "an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. 123, 157 (1908). "A particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty is needed for a state officer to be a proper defendant under *Ex parte Young*." *Connecticut Ass'n of Health Care Facilities, Inc. v. Rell*, No. 3:10CV136 PCD, 2010 WL 2232693, at *5 (D. Conn. June 3, 2010).

### A. Governor Lamont

Plaintiffs fail to show that Governor Lamont is a proper party under *Ex parte Young.* A governor's general constitutional duty to "take care that the laws be faithfully executed," Conn. Const. art. IV., § 12, does not implicate *Ex parte Young*. *See, e.g.*, *Kuck v. Danaher*, 822 F. Supp. 2d 109, 142 (D. Conn. 2011) ("[C]ourts in the Second Circuit have not extended the exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws.").

Plaintiffs point to the fact that Defendant Rovella serves at the pleasure of Governor Lamont and reports to him. (Pls.' Opp'n [Doc. # 34] at 5.) But "a generalized obligation to 'supervise' is insufficient for purposes of the *Ex parte Young* doctrine to apply." *See, e.g.*, *Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 422 (S.D.N.Y. 2022). As Defendants note, if "[a] general duty to enforce state law or to supervise other officials responsible for enforcing the challenged provision" were sufficient to demonstrate connection for purposes of *Ex parte Young*, "the constitutionality of every act passed by the legislature could be tested by a suit against the governor . . . based upon the theory that [he],

as the executive of the State was, in a general sense, charged with the execution of all its laws . . . ." *Emory v. New York*, No. 11-CV-1774 RRM RLM, 2013 WL 1881009, at *1 (E.D.N.Y. May 6, 2013).

Plaintiffs also argue that because Governor Lamont has expressed support for enhanced firearm regulation, he is sufficiently connected to the enforcement of the Challenged Statutes for purposes of *Ex parte Young*. (Pls.' Opp'n at 5-7.) But even if all of Plaintiffs' representations regarding the Governor's involvement with firearm policy are accepted, they do not constitute a sufficient connection under *Ex parte Young* to show that the Governor has *a particular duty to enforce* the laws in question. Indeed, even when plaintiffs have brought actions related to "executive orders and an emergency directive" issued by a governor, that has been found insufficient to make that governor a proper party under *Ex parte Young*. *See Roberson v. Cuomo,* 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021), *vacated and remanded as moot, Roberson v. Hochul*, No. 21-877, 2022 WL 19224518 (2d Cir. Sept. 27, 2022). It is clear that Governor Lamont is not sufficiently connected to the enforcement of the Challenged Statutes to fall under the *Ex parte Young* exception, and as such is not a proper defendant on this case.

### B.    Chief State's Attorney Griffin

Defendants further argue that CSA Griffin also is not a proper party under *Ex parte Young* because "Connecticut law does not impose upon him any special duty to investigate criminal matters or initiate criminal prosecutions in the first instance for violations of the criminal law, including a violation of § 53-202a-c." (Defs*.'* Mem. at 6) (citing Conn. Const. Art. XXIII.) Plaintiffs argue that the CSA has a significant role in the enforcement of the Challenged

Statutes, and thus Defendant Griffin falls under the *Ex parte Young* exception. (Pls.' Opp'n at 7-9.)[3]

Conn. Gen. Stat. § 51-276 establishes a Division of Criminal Justice within Connecticut's Executive Department and places it in charge of the investigation and prosecution of all criminal matters in the Superior Court. The CSA "shall administer, direct, supervise, coordinate and control the operations, activities and programs of the division." Conn. Gen. Stat. § 51-279(a); *see also* Conn. Const. Art. IV., § 27 (referring to the CSA as the "administrative head" of the division). Among his duties are to "establish guidelines, policies, and procedures for the internal operation and administration of the division which shall be binding on all division personnel." Conn. Gen. Stat. § 51-279(a)(3). The Chief State's Attorney may also "participate on behalf of the state in all appellate, post-trial and postconviction proceedings arising out of the initiation of any criminal action," and may "sign any warrants, informations, applications for grand jury investigations and applications for extradition." *Id.* § 51-277(c)-(d)(1). The CSA "may, with the prior consent of the state's attorney for the judicial district, appear in court to represent the state." *Id.* § 51-277(d)(2). The CSA may also take over the responsibilities of a state's attorney for a judicial district if the CSA finds there to be a conflict of interest. *Id.* § 51-277(d)(3).

The Second Circuit has stated that the CSA occupies a "somewhat peculiar position" as the "administrative head" of the Connecticut Division of Criminal Justice. *Powers v. Coe*, 728 F.2d 97, 99 n.3 (2d Cir. 1984) (comparing the CSA, in certain respects, to the role of an

---

[3] Plaintiffs make much of the fact that in Defendants' opposition to Plaintiffs' Temporary Restraining Order, Defendants cite to statements by CSA Griffin as representative of the position of the Division of Criminal Justice on matters of firearm enforcement. (*See* Defs.' Resp. to Pls.' Mot. for Emergency TRO [Doc. # 36] at 3.) But the fact that CSA Griffin is a supervisor with policy-setting authority over individual State's Attorneys, without more, does not make him subject to suit under the *Ex parte Young* exception to Eleventh Amendment immunity. *See supra* Section III(A).

attorney general). Plaintiffs argue that the CSA's role, including his authority to set agency policy, involves him sufficiently in enforcement to render him a proper party (Pls.' Opp'n at 8.) Defendants argue that CSA Griffin is an improper defendant for substantially the same reason as Governor Lamont, and that Plaintiffs' argument collapses into the same arguments about supervisory authority and policy-making that are insufficient to trigger the *Ex parte Young* exception in the gubernatorial context. The Court finds that, like Governor Lamont, CSA Griffin lacks a particularized duty to enforce the Challenged Statutes, and instead functions in a supervisory role over those that do have such a duty, i.e., the individual state's attorneys for each of Connecticut's judicial districts.[4] *See Inkel v. Connecticut*, No. 3:14-CV-01303 MPS, 2015 WL 4067038, at *5 (D. Conn. July 2, 2015) ("[The] Chief State's Attorney . . . is responsible for administering the State Division of Criminal Justice, but, with exceptions not relevant here, he is not responsible for prosecuting individual cases within the various judicial districts. It is the local State's Attorney for each judicial district that bears the latter responsibility."). The Court concludes that Chief State's Attorney Griffin is not a proper defendant to Plaintiffs' claims.

### C. State's Attorneys Kelley, Applegate, Corradino, Shannon, Gailor, Ferencek, Gedansky, Watson, Platt, and Mahoney

Plaintiffs have failed to show that State's Attorneys Kelley, Applegate, Corradino, Shannon, Gailor, Ferencek, Gedansky, Watson, Platt, and Mahoney have the necessary connection to the enforcement of the Challenged Statutes against Plaintiffs. Individual Plaintiffs Grant, Hamilton, and Stiefel reside in Meriden, Enfield, and Montville, Connecticut,

---

[4] "Each state's attorney, assistant state's attorney and deputy assistant state's attorney shall diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court or in which the court may proceed, whether committed before or after his appointment to office." Conn. Gen. Stat. § 51-286a(a).

respectively. (SAC ¶¶ 8, 18, 24.) The State's Attorneys for these districts are Defendants Doyle, Walcott, and Narducci, responsible for the judicial districts of New Haven, Hartford, and New London respectively, and Defendants maintain that this action cannot be brought against any State's Attorneys other than those three. (Defs.' Mem. at 9-11.) *See Elliott v. City of Hartford*, No. 3:09CV00948(AWT), 2013 WL 12402403, at *2 (D. Conn. Sept. 30, 2013) ("Each of the thirteen judicial districts in Connecticut is led by a state's attorney, who is appointed by the Criminal Justice Commission"); *see also Connecticut's Judicial Districts and State's Attorneys*, CT.gov, https://portal.ct.gov/DCJ/About-Us/About-Us/Judicial-Districts-and-States-Attorneys, (last accessed on February 2, 2023), (identifying thirteen judicial districts and corresponding State's Attorneys).

Plaintiffs respond that "it does not take leaps of logic to infer" that any of the State's Attorneys could still enforce the Challenged Statutes against Plaintiffs if Plaintiffs were to travel to districts other than where they reside. (Pls.' Opp'n at 9.) Plaintiffs also argue that Defendants fail to address the representative capacity claims of CCDL and SAF, and their 41,000 members dispersed throughout Connecticut, because "CCDL could safely produce members who live in every judicial district in Connecticut if called upon to do so." (*Id.* at 10.)

"The Second Circuit has repeatedly observed that, in contrast to a motion to dismiss for failure to state a claim, 'when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 494 (S.D.N.Y. 2020) (quoting *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). Plaintiffs do not plead that any of the Individual Plaintiffs wish to travel with prohibited firearms to judicial districts other than those in which they reside, nor do they provide any details regarding hypothetical CCDL or SAF members from other judicial districts that wish to engage in prohibited conduct. Plaintiffs fail to meet their burden to demonstrate that State's Attorneys Kelley, Applegate, Corradino, Shannon, Gailor,

Ferencek, Watson, Gedansky, Platt, and Mahoney have the necessary connection to enforcement of the Challenged Statutes against Plaintiffs under *Ex parte Young* and thus are improper defendants in this action.

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED as to all claims against Defendants Lamont, Griffin, Kelley, Applegate, Corradino, Shannon, Gailor, Ferencek, Watson, Gedansky, Platt, and Mahoney.  The case will proceed against Defendants Rovella, Doyle, Walcott, and Narducci.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of August, 2023