UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GRANT, ET. AL<br>*Plaintiff*, | : | CIVIL NO. 3:22-CV-01223(JBA) |
| | : | |
| v. | : | |
| | : | |
| NED LAMONT, ET AL.,<br>*Defendant.* | : | AUGUST 24, 2023 |

## MOTION FOR RELIEF FROM PLAINTIFFS' CONFIDENTIALITY DESIGNATIONS PURSUANT TO STANDING PROTECTIVE ORDER (ECF # 8)

Defendants hereby respectfully apply for relief pursuant to this Court's standing protective order. Defendants seek Plaintiffs' designations under such order be rejected, the Defendants' motion to seal all documents containing such designated information be denied, and all such documents be unsealed. As noted in Defendants' motion to seal (Doc. # 54), Plaintiffs have designated large portions of their deposition testimony as either "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to this Court's standing protective order. (Doc. # 8). Plaintiffs' designations are improper, and they cannot meet their burden to demonstrate compelling circumstances that outweigh the public's presumptive access to such documents. Accordingly, pursuant to paragraph 12 of the standing order, Defendants now moves this Court to reject the Plaintiffs' designations and unseal the unredacted versions of Defendants' brief in Opposition to Plaintiffs' Amended Motion for Preliminary Injunction (Doc. # 55), Exhibit I (Doc. # 56), Exhibit J (Doc. # 57), and Exhibit K (Doc. # 58).

**I. BACKGROUND**

On July 10, 2023, the undersigned took the depositions of the three individual Plaintiffs in this case. On July 21, 2023, Plaintiffs' counsel designated several portions of the deposition transcripts of Plaintiffs as "Designated Material." Specially, Plaintiffs' counsel designated portions

1

of the deposition transcripts of Plaintiffs Grant and Stiefel as "CONFIDENTIAL," including, *inter alia*, the number of firearms they currently own and how many of each type of firearm they currently own. As for Plaintiff Hamilton, Plaintiffs' counsel designated large portions of her testimony as "CONFIDENTIAL-ATTORNEY'S EYES ONLY," some of which related to questions Defense counsel asked about paragraphs 7 of both of her Declarations filed in this case. (Doc. #28-1 at 11; Doc. #28-6 at ¶ 7; Doc. #51-1 at 11; Doc. #51-6 at ¶ 7.) Plaintiffs' counsel did not designate the number of firearms or types of firearms Plaintiff Hamilton owns as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY's EYES ONLY."

Because such designations were provided to undersigned counsel on July 21, 2023, Defendants could not accomplish all of the steps necessary to remedy, alter, or remove these designations pursuant to paragraph 12 of the Standing Protective Order prior to the Defendants' deadline to respond to Plaintiffs' Motion for Preliminary Injunction as articulated in this Court's scheduling order of June 30, 2023. (Doc. #50). Consequently, in order to remain in compliance with the dictates of the standing order, Defendants submitted their Objection to Plaintiffs' Amended Motion for Preliminary Injunction with any designated information or material under seal and/or redacted. (See Doc. #59, 58, 57, 56, 55). As Defendants noted in the required motion to seal, Defendants did so and filed such motion to seal in an effort to comply both with the Standing Protective Order and Local Rule 5 despite their disagreements with Plaintiffs' designations. (See Doc. # 54).

On July 27, 2023, the parties met and conferred regarding these designations as required by the standing protective order. (Doc. # 8, ¶ 12). Plaintiffs' counsel did not agree to withdraw any designations; they did, however, alter the "CONFIDENTIAL—ATTORNEY'S EYES ONLY" designations in Plaintiff Hamilton's deposition transcript to be merely "CONFIDENTIAL." As to

2

all designations, Plaintiffs' counsel maintained that they made all designations because they have an "expectation of privacy" in the confidentiality of all such information. Following this meet and confer, pursuant to ¶ 12 of the standing order, undersigned counsel prepared and delivered a letter requesting withdrawal of the Plaintiffs' designations. (See Ex. A). To date, Plaintiffs' have neither responded to this letter nor withdrawn their improper designations.

## II. ARGUMENT

### A. Plaintiffs have improperly designated information which is neither "CONFIDENTIAL" nor "CONFIDENTIAL-ATTORNEYS EYES ONLY" as defined by the protective order.

The Court's Standing Protective Order (Doc. #8) allows a party producing "information, documents and other materials" to be "designated by the producing party" as "designated material" under the Order, meaning the party may designate material as either "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY." (Doc. #8 at ¶¶2-4.) As to the "CONFIDENTIAL" designation, such material is defined under the standing order as: "information, documents, or things that have not been made public by the disclosing party and that the disclosing party reasonably and in good faith believes contains or comprises (a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy." (Doc. # 8 ¶ 3). Alternatively, "CONFIDENTIAL-ATTORNEY'S EYES ONLY" means "CONFIDENTIAL information that the disclosing party reasonably and in good faith believes is so highly sensitive that its disclosure to a competitor could result in significant competitive or commercial disadvantage to the designating party." (Doc. # 8, ¶ 4). And the standing order cautions that the parties must "use reasonable care to avoid designating as confidential documents or information that do[] not need to be designated as such." (Doc. # 8, ¶ 11).

Here, as for Plaintiffs Grant and Stiefel's deposition transcripts, Plaintiffs designated any reference to the number of firearms they currently own as "CONFIDENTIAL."[1] During counsel's meet and confer, Plaintiffs' counsel claimed such designations were limited to the claim that such information implicates a "legitimate expectation of privacy." But, as discussed further below, there is no authority to suggest that Plaintiffs have a legitimate expectation of privacy in how many firearms they own or how many of each type of firearm they own. Beyond this, Plaintiffs are affirmatively arguing that Conn. Gen. Stat. § 53-202a-c and Conn. Public Act No. 23-53, § 23 "place them at a disadvantage to violent criminals who have no regard for the law and who may target them." (Doc. #51-1 at 29.) Plaintiff Grant specifically alleges that these laws give "criminals and attackers a strong tactical advantage over him." (Doc. #48 at ¶16.) Plaintiffs are attempting to argue that they cannot defend themselves from potential criminals because of the laws they challenge, while ignoring the fact that each already own firearms which could be used to defend themselves. In short, Plaintiffs have placed the number of firearms they own at issue in this action and have no basis to assert such information should be sealed.

As for Plaintiff Hamilton, there can be no good faith basis to claim that anything in her deposition is "so highly sensitive that its disclosure to a competitor could result in significant competitive or commercial disadvantage to the designating party." (Doc. #8 at ¶4.) The portions of Ms. Hamilton's deposition that were designated as "CONFIDENTIAL-ATTORNEY'S EYES ONLY" do not address trade secrets or anything else that would impact her business or any commercial enterprise. For this reason alone, these designations should be rejected. Beyond this, the portions of Ms. Hamilton's testimony designated as "CONFIDENTIAL-ATTORNEY'S EYES

---

[1] Plaintiffs also designated any information regarding the location of storage of firearms in the Plaintiffs' homes as "CONFIDENTIAL." Defendants do not challenge those designations.

4

ONLY" are comprised of questions and answers about Ms. Hamilton's history of domestic abuse, which she has already alleged in this lawsuit both in the operative complaint and her declaration. Specifically, Ms. Hamilton claims she "has been the victim of domestic violence, and carries a defensive firearm to protect herself and her family from further attack." (Doc. #28-6 at ¶7; Doc. #48 at ¶19). The portions of Ms. Hamilton's deposition that were designated are comprised of questions and answers about the attacks Ms. Hamilton has placed at issue in this lawsuit and which serve as part of her claimed reason for carrying a firearm. As discussed further below, because Ms. Hamilton is a party to this action, has already placed such information at issue in the lawsuit, and because the questions and answers designated do not contain specific details regarding domestic abuse—because Ms. Hamilton was instructed not to answer such questions—there is no legitimate expectation of privacy in any of the designated information. As a result, none of these designations were proper under the standing protective order.

   B. **Plaintiffs cannot meet their high burden to demonstrate that any compelling interest outweighs the strong presumption of public access to these judicial documents.**

There is a specific process set forth for challenging designations under the protective order; simply designating an item under the protective order does not ensure that such documents must be sealed. Rather, "[s]uch Designated Material will be sealed by the Court only upon motion and in accordance with applicable law, including Rule 5(e) of the Local Rules of this Court. This Protective Order does not provide for the automatic sealing of such Designated Material." (Doc. # 8, ¶ 14). Plaintiffs, as the designating parties, bear the burden of demonstrating the designated material should be sealed. *Rogers v. Henry,* No. 16-cv-5271, 2017 U.S. Dist. LEXIS 197217, 2017 WL 5495805, at *5 (E.D.N.Y. Sept. 12, 2017) (collecting cases).

Plaintiffs cannot meet this high burden. There is a strong presumption against sealing court records from public inspection. *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-

CV-1209 CSH, 2013 U.S. Dist. LEXIS 110400, 2013 WL 4012772, at *2 (D. Conn. Aug. 5, 2013). "There is a common-law and First Amendment right of public access to judicial documents." *Valassis Communs., Inc. v. News Corp.,* No. 17-CV-7378 (PKC), 2020 U.S. Dist. LEXIS 79448, 2020 WL 2190708, at *1 (S.D.N.Y. May 5, 2020) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006)). The public's presumptive right of access to judicial documents is "potent and fundamental," *Mirlis v. Greer,* 952 F.3d 51, 58 (2d Cir. 2020) (citation omitted), and is "integral to our system of government," *United States v. Erie Cty., N.Y.,* 763 F.3d 235, 238-39 (2d Cir. 2014). Indeed, the Supreme Court and the Second Circuit have recognized the public's right to access court records and proceedings, rooted in both the common law and the First Amendment. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597-98 (1978); *Lugosch* at 119-120.

Because of the strong presumption of public access to court documents, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *In re Orion Pictures Corp.,* 21 F.3d 24, 27 (2d Cir. 1994). In order to rebut such a presumption, the party seeking to designate materials as confidential must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120.

In considering whether documents should be sealed from public view, a court undertakes a three-part analysis. *Averbach v. Cairo Amman Bank*, No. 19-CV-0004-GHW-KHP, 2023 U.S. Dist. LEXIS 109013, at *6 (S.D.N.Y. June 23, 2023) (citing *Lugosch*, 435 F.3d at 120). First, the court must determine whether the documents at issue are judicial documents. *Brown v. Maxwell*, 929 F.3d 41, 49-50 (2d Cir. 2019). Second, if so, the court must determine the weight of the presumption of public access that attaches. *Id*. at 49. Lastly, once the court has determined the

6

weight to accord the presumption of public access, it must determine whether competing considerations outweigh the presumption of access. *Lugosch*, 435 F.3d at 120.

The weight of the presumption of public access to a particular document is dependent upon the role of the document in the litigation. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."). Where the submissions "directly affect" the court's adjudication of the case, the documents are "judicial documents" and there is "a strong presumption of access." *Mut. Marine Office, Inc. v. Transfercom* Ltd., No. 08 CV 10367 (PGG), 2009 U.S. Dist. LEXIS 31739, 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009)). "The strongest presumption attaches where the documents 'determin[e] litigants' substantive rights,' and [the presumption] is weaker where the 'documents play only a negligible role in the performance of Article III duties.'" *Olson v. Major League Baseball*, 29 F.4th 59, 89-90 (2d Cir. 2022) (citations omitted). "[D]ocuments that the judge should have relied upon and those that actually entered into the judge's decision in adjudicating the parties' motions carry a heavy presumption of public access." *United States SEC v. Ahmed,* No. 3:15cv675 (JBA), 2020 U.S. Dist. LEXIS 251668, at *14 (D. Conn. July 10, 2020) (citing *Lugosch,* 435 F.3d at 123).

The documents at issue here are judicial documents entitled to the highest presumption of access and Plaintiffs cannot meet their burden to overcome this presumption of public access to the documents and information at issue. "Documents filed as exhibits to motions or as attachments to letters filed with the Court seeking some type of judicial action are, in fact, 'judicial documents.'" *Bredehorn v. Young*, No. CV 19-1010 (SJF) (AKT), 2020 U.S. Dist. LEXIS 74551, at *6 (E.D.N.Y. Apr. 28, 2020). The deposition transcripts are exhibits to the Defendants' objection

7

to the Plaintiffs' motion for preliminary injunction, contain the testimony of the individual Plaintiffs regarding the subject matter of the lawsuit that they have brought, and are essential to resolving the plea for extraordinary relief in the motion. The Court will almost certainly rely upon the deposition transcripts in resolving the Plaintiffs' motion for preliminary injunction and Plaintiffs themselves rely only on their testimony and claims to satisfy several of the *Winters* factors, including the balance of the equities. This renders these judicial documents entitled to a strong presumption of public access. *See Lugosch*, 435 F.3d at 119 (judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process")(internal quotation marks and citation omitted); *Winfield v. City of N.Y.,* No. 15-cv-5236, 2017 U.S. Dist. LEXIS 103612, 2017 WL 2880556, at *3 (S.D.N.Y. July 5, 2017) ("Judicial documents consist of testimonials or documents that a court relies on to perform its Article III duties and substantively adjudicate a matter."); *Rogers*, 2017 U.S. Dist. LEXIS 197217, at *5 ("Documents related to filed motions are also judicial documents").

And the material itself within these judicial documents is highly relevant to disproving Plaintiffs' claims in their complaint and affidavits. All Plaintiffs claim that they require assault weapons in order to defend themselves; any information which bears upon their ability to defend themselves—including how many and what types of firearms they currently own—is relevant and useful to the Court. As for Ms. Hamilton, she claims she requires assault weapons in order to defend herself against future attack based upon her history of domestic abuse. Thus, any testimony about what type of attack, whether she can defend herself with the firearms she already owns, and why an assault weapon is necessary to protect herself is obviously at issue and relevant—yet all such information was designated by Plaintiffs' counsel. And the fact that Plaintiffs designated the information as confidential—even if there were some valid basis to do so—has no bearing on the

8

presumption of public access once the material becomes a judicial document. See *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ir.) Ltd.,* 2021 WL 3540221, at *3 (S.D.N.Y. Aug. 11, 2021) ("bargained-for confidentiality" is not a "higher value" that can overcome the presumption of access to judicial documents).

Further, Plaintiffs have not identified any compelling countervailing factors that outweigh the presumption of public access to these documents. At best, Plaintiffs Stiefel and Grant suggest that they have some expectation of privacy in how many firearms they own. But there is no legal authority to support this contention. There is no state or federal statute that protects the confidentiality of how many firearms an individual owns.[2] Moreover, Mr. Stiefel and Mr. Grant's claims of privacy ring hollow in light of the fact that *they* have put their firearm ownership and their ability to defend themselves at issue by filing a federal lawsuit and maintaining they are currently unable to defend themselves because they cannot purchase assault weapons. *See Doe v. City of N.Y.,* No. 1:22-CV-7910 (LTS), 2022 U.S. Dist. LEXIS 196094, at *12 (S.D.N.Y. Oct. 26, 2022) (fact that information that is already public or put at issue by designating party "weighs against sealing"); *United States v. Basciano,* Nos. 03-CR-0929. 05-CR-0060, 2010 U.S. Dist. LEXIS 39994, 2010 WL 1685810, at *3-4 (E.D.N.Y. Apr. 23, 2010) (privacy interest in sealing documents was weakened by the fact that the public was already aware of the relevant information). Their protestations of privacy are even further undercut by the fact that their fellow

---

[2] While Connecticut statute does prohibit disclosure of "the name and address of a person" issued a pistol permit, Plaintiffs have voluntarily waived the protection against disclosure of their names by filing this action and filing documents on the public docket identifying themselves both as gun owners and pistol permit holder. See Conn. Gen. Stat. § 29-28. There is no similar confidentiality provision under Connecticut law for the *number* of firearms or types of firearms an individual owns, other than a statute that protects the identity of those who have received certificates of possession for ownership of grandfathered assault weapons, which does not apply to the Plaintiffs here. Conn. Gen. Stat. § 53-202d(a)(2)(B)(5).

9

Plaintiff, Ms. Hamilton, does not maintain such an "expectation" of privacy in the number of and types of firearms she owns.

Plaintiff Hamilton's designations are similarly unsupported. Many of Ms. Hamilton's designations relate to questions about domestic abuse. Counsel, however, has not only designated Ms. Hamilton's answers to questions or any words or phrases used by Defendants' counsel which would potentially reveal details about Ms. Hamilton's history, but rather has wholesale designated pages of deposition testimony—including counsel's questions that include little, if any, reference to potentially private details. Such designations are clearly not "narrowly tailored" as required. *Susquehanna Intl Grp. Ltd. v. Hibernia Express (Ir.) Ltd.,* 2021 U.S. Dist. LEXIS 151075, 2021 WL 3540221, at *4 (S.D.N.Y. Aug. 11, 2021) (A sealing request is "narrowly tailored" when it seeks to seal *only* that information that must be sealed to preserve higher values); *Wiav Sols. Inc. v. HTC Corp.,* No. 19CV4978PGGKHP, 2021 U.S. Dist. LEXIS 43997, 2021 WL 871415, at *1 (S.D.N.Y. Mar. 9, 2021) ("privacy interests… do[] not obviate the need for the proposed redactions to be narrowly tailored to protect those interests."). Even setting aside these overbroad designations, Ms. Hamilton's claim that she has a legitimate expectation of privacy in *any and all* information even slightly relating to any domestic violence incidents she may have suffered (including whether she possessed any weapons while a victim, whether she still suffered such incidents, whether she felt she could defend herself now) is without merit. Ms. Hamilton was instructed not to answer any questions that her counsel believed were too detailed, and counsel only permitted her to answer broad questions which revealed almost no detailed information about any domestic abuse. While courts have "declined to allow public access simply to cater to a morbid craving for that which is sensational and impure," the very limited information Ms. Hamilton was even permitted to answer here (and defense counsel's limited questions) lack any such detail

10

beyond what Ms. Hamilton has already put at issue, and beyond what is relevant and necessary to resolution of the preliminary injunction. *United States v. Amodeo,* 71 F.3d 1044, 1051 (2d Cir. 1995).

While some courts have recognized that "the privacy interests of innocent *third parties* . . . should weigh heavily in a court's balancing equation," the same weight is not afforded to a party who has put such information at issue and who has already disclosed such information on the public docket. *Amodeo*, 71 F.3d 1044, 1050 (emphasis added). Courts have often declined to seal personal information when it relates to allegations made in the complaint or filings by a party and is "necessary to or helpful in resolving a motion." *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 442 (S.D.N.Y. 2018); see also *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).

Ms. Hamilton has put her domestic abuse history squarely at issue. She specifically references this domestic violence history in three publicly available documents filed in this case: the Complaint, and two affidavits supporting her motions for preliminary injunction. (Doc. #28-1 at 11; Doc. #28-6 at ¶ 7; Doc. #51-1 at 11; Doc. #51-6 at ¶ 7). But, when asked to elaborate or answer the most basic follow up questions on this information that *she* placed in the public sphere, Plaintiff refused to answer many questions and designated all such information as "CONFIDENTIAL-ATTORNEYS EYES ONLY." Indeed, even when simply asked what Ms. Hamilton meant when she stated—in two affidavits on the public docket—that she needed assault weapons "to defend against future attack," Plaintiff designated the question and her response as confidential despite having already made this topic public. Plaintiffs may not file a lawsuit, make claims about their inability to defend themselves, and simply refuse to answer questions or dictate the information available to the public. See *Moroughan v. Cnty. of Suffolk,* No. 12-CV-0512, 2021 U.S. Dist. LEXIS 13133, 2021 WL 280053, at *4 (E.D.N.Y. Jan. 24, 2021) ("[G]iven the critical

nature of those issues in this litigation and their presence in other public documents, it is the Court's view that the public has a strong interest in access to all the evidence surrounding those issues in the Court's Opinion in order to allow the public to make their own assessment of the parties' summary judgment arguments and the Court's decision."); *United States v. Cohen,* No. 18-CR-0602, 2019 U.S. Dist. LEXIS 118975, 2019 WL 3226988, at *1 (S.D.N.Y. July 17, 2019) ("[T]he involvement of most of the relevant third-party actors is now public knowledge, undercutting the need for continued secrecy."). Ultimately, the designations as to Plaintiff Hamilton's domestic violence history are overly broad, improper, and without legal basis. She cannot use this information as both a sword and a shield, alleging in public that this is the reason she should be granted extraordinary, pretrial relief, while at the same time keeping the follow up questions and answers as confidential.

Plaintiffs cannot meet their high burden to demonstrate that their many designations of "CONFIDENTIAL" material in their deposition transcripts are appropriate.

### III. CONCLUSION

For all the foregoing reasons the Defendants respectfully ask this Court to grant this motion, order the aforementioned designations be removed, and allow Defendants' Opposition to Plaintiffs' Motion for Preliminary Judgment and the attached exhibits to be filed on the public docket.

```
                              DEFENDANTS
                              Lamont, et al.

                              WILLIAM TONG
                              ATTORNEY GENERAL

                        BY:

                           /s/ Janelle R. Medeiros
                              Janelle R. Medeiros
```

Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct30514
E-Mail: janelle.medeiros@ct.gov
Tel.: (860) 808-5450
Fax: (860) 808-5590

_____
James M. Belforti
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5450
Fax: (860) 808-5591
Federal Bar No. ct30449
E-Mail: james.belforti@ct.gov

## **CERTIFICATION**

I hereby certify that on August 24, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____
James M. Belforti
Assistant Attorney General