UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDDIE GRANT, JR., *et al.*<br><br>    *Plaintiffs*,<br><br>v.<br><br>EDWARD M. LAMONT, JR., in his official capacity, *et al.*,<br><br>    *Defendants*. | Civil No. 3:22-cv-01223 (JBA)<br><br>August 28, 2023 |

**RULING ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs move for a preliminary injunction against Defendants in their official capacities that enjoins them from enforcing Conn. Gen. Stat. §§ 53-202a-f, 53-202h-j, and Conn. Public Act No. 23-53, § 23 (the "Challenged Statutes") (Pls.' Mem. for Prelim. Inj. [Doc. # 51]), arguing that the Challenged Statutes infringe on their Second Amendment right to keep and bear arms as articulated by *District of Columbia v. Heller,* 554 U.S. 570 (2008) and *New York State Rifle & Pistol Association, Inc. v. Bruen,* 142 S. Ct. 2111 (Jun. 23, 2022). Defendants argue *inter alia* that Plaintiffs cannot show a likelihood of success on the merits because the weapons Plaintiffs seek to possess are not protected by the Second Amendment and that the Challenged Statutes are consistent with this nation's tradition and history of firearm regulation. (Defs.' Opp'n to Mot. for Prelim. Inj. [Doc. # 59].) Based on this Court's prior ruling on the preliminary injunction motion in *National Ass'n for Gun Rights, et al, v. Lamont*, 3:22-1118(JBA), [Doc. # 85] (Aug. 3, 2023) ("*NAGR* PI Ruling") and for the reasons set forth below, the motion is denied.[1]

---

[1] Plaintiffs' motion to for leave to file excess pages [Doc. # 61] is granted *nunc pro tunc,* but Plaintiffs are reminded that any motion to depart from the page limit requirements is to be filed "at least seven (7) days before the deadline for the filing of the memorandum at issue," and a motion for permission not in compliance with the rule will "ordinarily be denied".

1

I.  **Background**

   A.  **Challenged Statutes**

Conn. Gen. Stat. §§ 53-202a-f and Conn. Gen. Stat. §§ 53-202h-j restrict ownership of certain categories of firearms categorized as "assault weapons", which the statute defines both by naming specific firearms and by outlining categories of firearms with certain features that qualify. *Id.* The possession, sale, and transfer of those firearms is prohibited, and violation of the statute is a Class D felony punishable by a mandatory 1-year sentence, with a maximum of 5 years incarceration. Conn. Gen. Stat. § 53-202c(a); Conn. Gen. Stat. § 53a-35a(8). Distributing, transporting, importing, stocking for sale, advertising for sale, or gifting an assault weapon is a Class C felony, carrying a mandatory minimum of two years incarceration with a maximum of up to 10 years. Conn. Gen. Stat. § 53-202b(a)(1); Conn. Gen. Stat. § 53a-35a(7).

Previously, the statutes regulated only pistols, rifles, and shotguns; the term "other firearms" was commonly used to refer to weapons that did not meet the Connecticut statutory definition of either a pistol, a rifle, or a shotgun, and therefore did not qualify as an assault weapon. (Pls.' Mem. at 5.) "Others" often use "pistol braces", which attach to a person's forearm to provide stability and are visually similar to shoulder stocks but which manufacturers claim are not meant to allow for firing from the shoulder. (*Id.*) On January 31, 2023, the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) published a rule clarifying that firearms equipped with "stabilizing braces" (also referred to as "wrist braces" or "pistol braces") are now classified either as "rifles" or "short-barreled rifles" (depending on the length of the barrel) under federal law. (TRO Order at 2.) Individuals

---

D. Conn. Loc. R. 7. Further motions to depart from the page limits set in Rule 7 that are not filed in advance will not be considered absent extraordinary circumstances, and in the future, pages in excess of the page limit will not be considered by the Court.

owning these firearms may keep them under the ATF's new rule but must register them with the ATF; however, the Department of Justice announced in an online public information session held on January 31, 2023 that ATF would not accept registrations from Connecticut residents because it viewed the previously categorized "others" as now meeting the definition of "assault weapons" under Connecticut law because of the ATF reclassification of such "others" as being types of rifles. (Pl.'s Mot. at 7.) However, on February 8, 2023, the Connecticut Department of Emergency Services and Public Protection's Special Licensing and Firearms Unit released an official memorandum clarifying that despite the change in the ATF classification, it did not consider "others" to be assault weapons covered by the ban under Connecticut law. (Order Denying TRO [Doc. # 41] at 3-4.)

The classification of Connecticut "others" under Connecticut law changed on June 6, 2023, when Defendant Lamont signed into law Conn. Public Act No. 23-53, expanding the definition of "assault weapon" to include many of the weapons that were formerly defined as "others" if they meet the following criteria:

> (G) Any semiautomatic firearm other than a pistol, revolver, rifle or shotgun, regardless of whether such firearm is listed in subparagraphs (A) to (D), inclusive, of this subdivision, and regardless of the date such firearm was produced, that has at least one of the following:
>
>> (i) Any grip of the weapon, including a pistol grip, a thumbhole stock or any other stock, the use of which would allow an individual to grip the weapon, resulting in any finger on the trigger hand in addition to the trigger finger being directly below any portion of the action of the weapon when firing;
>>
>> (ii) An ability to accept a detachable ammunition magazine that attaches at some location outside of the pistol grip;
>>
>> (iii) A fixed magazine with the ability to accept more than ten rounds;
>>
>> (iv) A flash suppressor or silencer, or a threaded barrel capable of accepting a flash suppressor or silencer;
>>
>> (v) A shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to fire the firearm without being burned, except a slide that encloses the barrel;

>> (vi) A second hand grip; or
>
>> (vii) An arm brace or other stabilizing brace that could allow such firearm to be fired from the shoulder, with or without a strap designed to attach to an individual's arm;
>
> (H) Any semiautomatic firearm that meets the criteria set forth in subdivision (3) or (4) of subsection (a) of section 53-202a of the general statutes, revision of 1958, revised to January 1, 2013, that was legally manufactured prior to September 13, 1994; or
>
> (I) A combination of parts designed or intended to convert a firearm into an assault weapon, as defined in any provision of subparagraph (G) or (H) of this subdivision, or any combination of parts from which an assault weapon, as defined in any provision of subparagraph (G) or (H) of this subdivision, may be assembled if those parts are in the possession or under the control of the same person;

*See* Conn. Gen. Stat. §§ 53-202a. The newly added "other" firearms that now qualify as assault weapons are called "2023 assault weapon[s]" in the statute. *Id.* at Section 53-202a(10).

### B. Plaintiffs

#### 1. Connecticut Citizens Defense League

Plaintiff Connecticut Citizens Defense League, Inc. ("CCDL") is a non-profit whose mission is to "preserve the effectiveness of the Second Amendment through legislative and grassroots advocacy, outreach, education, research, publication, legal action, and programs focused on the constitutional right to keep and bear arms." (Second Amend. Compl. ¶ 32) It alleges that it brings this action on behalf of its members, supporters, and similarly situated members of the public, and that it has "diverted, and continues to divert, significant time, money, effort, and resources" that were "otherwise reserved for different institutional functions and purposes" to address the Challenged Statutes. (*Id.* ¶¶ 32-34.)

#### 2. Second Amendment Foundation

Second Amendment Foundation ("SAF") is a nonprofit headquartered in Washington which maintains over 700,000 "members and supporters nationwide, including many members in Connecticut." (*Id.* ¶ 37.) SAF's purpose is "education, research, publishing, and

4

legal action focusing on the constitutional right to privately own and possess firearms under the Second Amendment, and the consequences of gun control." (Id. ¶ 38.) It alleges that the "Court's interpretation of the Second Amendment directly impacts SAF's organizational interests" and those of its members and supporters in Connecticut, on whose behalf it brings this suit. (*Id.*) According to SAF, "individual Connecticut members have been adversely and directly harmed and injured by Defendants' enforcement of the statutory prohibition on the sale, transfer, and ownership" of assault weapons. (*Id.*) SAF has dedicated "resources that would otherwise be available for other purposes" to engage in this lawsuit. (*Id.* ¶ 39.)

### 3. Eddie Grant Jr.

Plaintiff Eddie Grant Jr. is a Meriden, Connecticut resident and retired Connecticut Department of Corrections officer. (Pls.' Mem. in Support of Prelim. Inj. [Doc. # 52-1] at 8.) He has a Connecticut pistol permit, which he has had for over 30 years. (*Id.*) He has also been trained on the safe and effective use of AR-15-platform firearms as part of his Corrections officer training and was "repeatedly qualified as a safe and effective user" while working there. (*Id.* at 9.) He "seeks to lawfully purchase and possess an AR-15-platform firearm for defensive purposes." (*Id.* at 9.) His desire stems in part from his background as an African American man whose parents witnessed the struggle for civil rights in the Deep South, and his understanding that "racially motivated attacks were repelled in large part by the private ownership of effective defensive firearms as African-Americans bravely defended their lives and their right to equality under the rights guaranteed by the Constitution." (*Id.* at 9-10.)

### 4. Jennifer Hamilton

Plaintiff Jennifer Hamilton is a Nuisance Wildlife Control Operator working for the Connecticut Department of Energy and Environmental Protection; she is also a firearms instructor. (*Id.* at 10-11.) Hamilton lives in Enfield, Connecticut, and has pistol permits for both Connecticut and Massachusetts. (*Id.* at 11.) Hamilton "seeks, and intends, to lawfully

purchase one or more firearms prohibited in Conn. Gen. Stat. § 53-202a – likely an AR-15-platform firearm – because of their adaptability and effectiveness for defensive purposes," as well as a firearm "with a telescopic stock in order to adjust the firearm's length of pull to fit her specific body type and size, which will, in turn, give her greater control over the firearm and improve her accuracy with it." (*Id.* at 11.) Hamilton, who has been the victim of domestic violence, states in her affidavit that she relies on defensive firearms to protect herself and her family from threats and attacks. (*Id.*)

### 5.      Michael Stiefel

Plaintiff Michael Stiefel is a retired Connecticut Department of Corrections officer who has held a Connecticut pistol permit for over thirty years. (*Id.* at 12.) During his career, he was trained on the safe and effective use of AR-15 platform firearms and qualified annually as a safe and effective user of AR-15 platform firearms. (*Id.* at 12-13.) He "seeks, and intends, to lawfully purchase and possess an AR-15-platform firearm for defensive purposes." (*Id.* at 13.)

All three individual Plaintiffs submit in their affidavits that they are CCDL and SAF members, that they meet "all federal and state requirements to lawfully acquire and possess firearms, ammunition, and magazines," that they have Connecticut pistol permits, and that they own firearms categorized as 2023 assault weapons and have taken active steps to attempt to acquire additional 2023 assault weapons. (Pls.' Mem. at 8-12.)

### C.      Defendants

Defendants are Commissioner of Connecticut's Department of Emergency Services and Public Protection ("DESPP") James Rovella, and Connecticut's State's Attorneys Walcott,

Doyle, and Narducci.[2] (*See* Second Amend. Compl). All Defendants are sued in their official capacities.

### D. Procedural History

Plaintiffs filed their initial complaint on September 29, 2022, and filed their first amended complaint on October 24, 2022. On February 3, 2023, Plaintiffs filed an emergency motion for temporary restraining order and preliminary injunction ("TRO") barring enforcement of Conn. Gen. Stat. §§ 53-202a, 53-202b, and 53-202c ("the Assault Weapons Ban"), and, in the alternative, sought to enjoin Defendants from treating firearms "that have been considered legal 'others' under Connecticut law as 'assault weapons' until the Court can determine the merits of their application for a preliminary injunction." [Doc. # 28]. On February 8, 2023, Defendants filed a motion to dismiss based on 11th Amendment immunity, [Doc. # 29], which was granted. (*See* [Doc. # 63].) The TRO was dismissed for lack of standing on June 1, 2023, based on a lack of evidence that Plaintiffs were subject to a credible and imminent threat of enforcement of the ATF rule against them. [Doc. # 41]. After Governor Lamont signed Conn. Public Act No. 23-53 into law on June 6, 2023, the Court permitted Plaintiffs to file a Second Amended Complaint and an amended motion for preliminary injunction to add challenges to the newly defined categories of assault weapons.

## II. Legal Standard

To obtain a preliminary injunction, "the movant has to demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction. The movant also must show that the balance of equities tips in his or her favor." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020).[3] When

---

[2] Defendants Lamont, Griffin, Kelley, Applegate, Corradino, Shannon, Gailor, Ferencek, Watson, Gedansky, Platt, and Mahoney were dismissed from the suit. *See* [Doc. # 63].

[3] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

"the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," the injunction will only be granted if both irreparable harm and a likelihood of success on the merits are shown. *Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir. 1989).

This Court held in *NAGR* that an injunction seeking to enjoin enforcement of Connecticut's assault weapon ban was a prohibitory one, rather than a mandatory one. *NAGR* PI Ruling at 13. Defendants urge the Court to find in this case that the injunction is a mandatory one because Plaintiffs "seek to enjoin enforcement of an in-force statute that has been upheld as constitutional" in *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) (Defs.' Opp'n at 7.) Defendants cite to *Consumer Directed Pers. Assistance Ass'n of New York State, Inc. v. Zucker*, No. 118CV746FJSCFH, 2018 WL 3579860, at *2 (N.D.N.Y. July 25, 2018), in which the district court interpreted the "status quo" as being the time that the statute plaintiffs sought to enjoin enforcement of came into effect; however, *Consumer Directed Pers. Assistance Ass'n* failed to address the Second Circuit's *Mastrovincenzo v. City of New York*, 435 F.3d. 78, 90 (2d Cir. 2006) finding that enjoining enforcement of a statute is prohibitory, rather than mandatory. *Pankos Diner Corp. v. Nassau Cnty. Legislature*, 321 F. Supp. 2d 520, 523 (E.D.N.Y. 2003), suffers from a similar flaw.[4] Thus, the Court finds that absent any demonstration that granting the injunction would grant Plaintiffs all the relief sought, it is of a prohibitory injunction rather than a mandatory one.

---

[4] Defendants' arguments might have more weight if they were distinguishing *Mastrovincenzo* on the basis that the statute they were defending had been found constitutional, thus establishing a status quo of enforcement, by a case whose holding was still binding; however, *Cuomo's* ultimate holding that the Challenged Statutes were constitutional was premised primarily on the means-end analysis rejected by *Bruen,* and further was decided before the Challenged Statutes were amended in June of 2023.

### III. Discussion

In *NAGR,* the Court ruled on a motion for a preliminary injunction involving the same statute being challenged here, but which challenged only the firearms that were banned prior to the June 6, 2023 amendment. The Court adopts its prior holding in *NAGR* as to the analytical framework that now applies to Second Amendment challenges post-*Bruen* and the burdens borne by Plaintiffs and Defendants under that analytical framework. Thus, the only questions remaining to be decided on this motion are whether the Plaintiffs have (1) come forward with different or additional evidence that would warrant a different result in this case as to the pre-amendment categories of firearms, and (2) whether 2023 assault weapons may be constitutionally banned.

#### A. Standard for Evaluating Second Amendment Claims

Under *Heller* and *Bruen,* Plaintiffs "bear the burden of producing evidence that the specific firearms they seek to use and possess are in common use for self-defense, that the people possessing them are typically law-abiding citizens, and that the purposes for which the firearms are typically possessed are lawful ones." *NAGR* PI Ruling at 33. "To the extent that Defendants seek to demonstrate that the regulated firearms are instead dangerous and unusual weapons that are not protected by the Second Amendment, Defendants must demonstrate either that the weapons are unusually dangerous, or that they are not commonly used or possessed for self-defense." *Id.* at 34. "If Plaintiffs establish each of those elements, the burden shifts to Defendants to justify their regulation based on Bruen's requirements for establishing relevant similarity to history and tradition." *Id.* at 36.

#### B. Facial Challenges

This Court recently held that the standard for bringing facial challenges is that plaintiffs must show "that no set of circumstances exists" under which the Challenged Statutes would be constitutional based on the standard established in *United States v. Salerno*, 481 U.S. 739, 745 (1987) and reaffirmed as the governing standard in this Circuit by

*Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 548 (2d Cir. 2023). *See NAGR* PI Ruling at 13-16. However, the Supreme Court has also cautioned that "whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid[,]" *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984), and the Second Circuit followed this principle in *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265, 269 (2d Cir. 2015) by finding certain provisions of New York and Connecticut's statutory scheme regulating firearms to be unconstitutional (for example, Connecticut's ban on the Remington Tactical 7615 pump action rifle) and invalidating only those specific provisions while leaving the larger regulatory scheme intact. Thus, the Court will determine for each challenged portion of the statutes whether Plaintiffs have established that there is no set of circumstances under which the bans of the various types of firearms standing alone and in conjunction with their accessories, and of large capacity magazines, could be constitutional.

## C. Merits of Plaintiffs' Second Amendment Challenge

### 1. Whether Assault Weapons are Commonly Used for Self-Defense, and Typically Possessed by Law Abiding Citizens for Lawful Purposes, or are Dangerous and Unusual

Plaintiffs argue that there is "absolutely no question that the Plaintiffs meet the first requirement" under *Bruen* that their proposed conduct of keeping and bearing assault weapons for the purpose of self-defense "falls within the protections of the Second Amendment's text." (Pls.' Mem. at 19.) However, in *NAGR,* this Court held that showing mere statistical numerosity is insufficient to show that a weapon is in "common use for self-defense," and that there is no evidence that assault weapons are commonly used for that

10

purpose; none of the evidence presented by Plaintiffs here gives the Court a basis for finding otherwise. *See NAGR* PI Ruling at 26-33.[5]

Although the classification of "others" as 2023 assault weapons was not challenged as part of the preliminary injunction motion brought in *NAGR*, neither side argues that there are any significant differences in the key functionality between the 2023 assault weapons and the more limited group of firearms classified as assault weapons prior to the June 6, 2023 amendment; Defendants take the position that 2023 assault weapons are "functionally similar to firearms captured under the original ban," (Defs.' Opp'n at 6), and Plaintiffs posit that the "key distinction" between 2023 assault weapons and pre-2023 assault weapons is that 2023 assault weapons often use "pistol braces" (Pls.' Mem. at 5). While Plaintiffs use the phrase "modern sporting rifles" and "others" separately on several occasions, they also acknowledge that the 2023 assault weapons being criminalized are all semiautomatic, and Plaintiff Grant described owning an "other" in an "AR15 configuration", from which the Court infers that there is significant overlap in the key features. (Defs.' Opp'n at 48) (quoting Plaintiff Grant's Deposition Tr., Defs.' Ex. I.). Detective Warenda also identifies several examples of "others" that are "AR-15 type", (Wardenda Aff. ¶¶ 67-69) and submits that assault weapons—without distinguishing between pre-2023 categories and the new 2023 assault weapons—are a subcategory of all semiautomatic weapons, the majority of which are essentially civilian versions of military weapons. (Warenda Aff. ¶¶ 27, 19.) Plaintiffs also provide no evidence specific to common use of the 2023 assault weapons category besides

---

[5] Defendants also note that Thompson submachine guns, or "Tommy Guns", were "all too common" before Congress passed the National Firearms Act of 1934, but that *Heller* nevertheless affirmed the holding of *United States v. Miller*, 307 U.S. 174, 179 (1939) that the National Firearms Act banning Tommy Guns was constitutional because certain weapons were "not eligible for Second Amendment protection." *Heller's* affirmation of *Miller* provides yet another reason to interpret "common use" as requiring more than a simple showing that many people own the firearm in question.

the statistics of how many Connecticut "others" are registered with the state and the individual testimony of each Plaintiff regarding how they use their 2023 assault weapon, neither of which shows whether the firearms are commonly used for self-defense.

Thus, absent any specific evidence that 2023 assault weapons are commonly used for self-defense where pre-June 2023 assault weapons were not, Plaintiffs have failed to meet their burden here as well. Plaintiffs are correct that the Second Amendment "provides them with the freedom to choose a firearm. . . that is not 'dangerous and unusual'" and that is normally used for self-defense (Pls.' Reply at 14); however, until they submit evidence that supports a finding that the assault weapons in the Challenged Statutes meet those requirements, they cannot show a likelihood of success on the merits of their Second Amendment claim.

## 2. Whether the Firearm Regulations are Consistent with the Nation's Historical Tradition of Firearm Regulation

Plaintiffs' failure to produce evidence sufficient to show common use for self-defense of the assault weapons is fatal to their motion; however, the Court also finds that as in *NAGR,* the Challenged Statutes are consistent with the nation's history and tradition of firearm regulation. There, this Court concluded as a matter of law that the Challenged Statutes were enacted for the same reason as historical statutes regulating the method of carry and the types of weapons people could carry based on the new and dangerous characteristics of developing weapons technology: "to respond to growing rates of violence and lethality caused by modern innovations in technology and changing patterns of human behavior by regulating the particular kinds of weapons or modes of carry that were being most often employed by those causing the violence, while leaving open alternative avenues for lawful possession of firearms for purposes of self-defense." *NAGR* PI Ruling at 66. Because the Challenged Statutes ban "only a subset of each category of firearms that possess new and dangerous characteristics that make them susceptible to abuse by non-law abiding citizens

wielding them for unlawful purposes," the Court also found that the Challenged Statutes impose "a comparable burden to the regulations on Bowie knives, percussion cap pistols, and other dangerous or concealed weapons[.]" *Id.*

A number of other district courts have reached the same conclusion about the purpose for which early firearm and weapons regulations were enacted. *See, e.g., Oregon Firearms Fed'n v. Kotek Oregon All. for Gun Safety*, No. 2:22-CV-01815-IM, 2023 WL 4541027, at *46 (D. Or. July 14, 2023) (holding that "[t]hroughout this Nation's history, new technologies have led to the creation of particularly dangerous weapons," which "became tied with violence and criminality" as they became more common, and that the statutes being challenged shared the same driving motivation of "address[ing] the features of those weapons that made them particularly dangerous to public safety" as historical analogues); *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, No. CV 22-951-RGA, 2023 WL 2655150, at *13 (D. Del. Mar. 27, 2023) (finding that the statutes being challenged were comparably justified to historical analogues that "were enacted in response to pressing public safety concerns regarding weapons determined to be dangerous.") Plaintiffs offer no new evidence that undermines or refutes the Court's prior analysis of this Nation's history, or its ultimate holding. Thus, the Court will not repeat the same historical analysis to hold that even if Plaintiffs had demonstrated that assault weapons in the Challenged Statutes were commonly used for self-defense, they cannot show a likelihood of success on the merits because bans on certain semiautomatic weapons are consistent with and justified by this nation's history and tradition of firearm regulation.

## IV.     Conclusion

Plaintiffs' Motion for a Preliminary Injunction is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of August, 2023