## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDDIE GRANT, JR., JENNIFER HAMILTON; MICHAEL STIEFEL; CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; AND SECOND AMENDMENT FOUNDATION, INC.,

Plaintiffs,

v.

EDWARD M. LAMONT, JR., in his official capacity; JAMES ROVELLA, in his official capacity; PATRICK GRIFFIN, in his official capacity; MARGARET E. KELLY, in her official capacity; DAVID R. APPLEGATE, in his official capacity; JOSEPH T. CORRADINO, in his official capacity; SHARMESE L. WALCOTT, in her official capacity; DAVID R. SHANNON, in his official capacity; MICHAEL A. GAILOR, in his official capacity; CHRISTIAN WATSON, in his official capacity; JOHN P. DOYLE, JR., in his official capacity, PAUL J. NARDUCCI, in his official capacity; PAUL J. FERENCEK, in his official capacity; MATTHEW C. GEDANSKY, in his official capacity, MAUREEN PLATT, in her official capacity; ANNE F. MAHONEY, in her official capacity,

Defendants.

CIV. NO. 3:22-cv-01223-JAM

September 14, 2023

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM PLAINTIFFS' CONFIDENTIALITY DESIGNATIONS PURSUANT TO STANDING PROTECTIVE ORDER (DKT. 8)**

The Plaintiffs hereby respectfully submit this memorandum of law in opposition to the Defendants' motion for relief from their confidentiality designations under the Standing Protective Order (Dkt. 8).

## BACKGROUND

On July 10, 2023, the Defendants took the deposition of the three individual Plaintiffs in this case. During those depositions, the three individual Plaintiffs advised the undersigned

that they did not wish certain information in their deposition testimony to become a matter of public record. The undersigned sought to honor their clients' wishes and advised counsel for the Defendants that they would be making designations under the standing protective order in this case (Dkt. 8). Since the undersigned were focused on defending the depositions, they did not have a chance to review the standing protective order before stating the categories of testimony that they would designate during the deposition. Per agreement, the undersigned designated certain portions of the deposition transcripts "Confidential" and "Confidential-Attorney's Eyes Only" on July 21, 2023.

The three individual plaintiffs had different concerns regarding certain aspects of their testimony. All of the Plaintiffs designated where and how they store their firearms as "Confidential," and it is the undersigned's understanding from the deposition transcripts that the Defendants do not object to those designations. Plaintiffs Grant and Stiefel designated the number and type of firearms that they own as "Confidential." Plaintiff Hamilton did not join this second designation, but she marked the portion of her testimony pertaining to the domestic abuse that she suffered "Confidential – Attorney's Eyes Only."

The parties understood that the issue of the designations would be resolved separate from the sealing motions for purposes of the Plaintiffs' preliminary injunction. On July 27, 2023, the parties met and conferred. The undersigned declined to withdraw any of the designations although they acknowledged that the designation of Hamilton's testimony regarding the details of her domestic abuse did not meet the strict criteria under the standing protective order. Rather, the undersigned advised the Defendants that they would be seeking a separate protective order designating that portion of Hamilton's testimony as "Confidential

– Attorney's Eyes Only." They further advised the Defendants that they would maintain the designation to protect Hamilton's privacy interest in the interim, but they would ultimately not claim it under the standing protective order and that, at a bare minimum, they would claim it as "Confidential."

The Defendants did deliver a letter to the Plaintiffs detailing their position regarding the designations, and the undersigned's busy schedules prevented them from providing a written response. They, however, fully communicated their position at their conference on July 27, 2023.

Finally, on September 11, 2023, the undersigned provided the Defendants with a draft motion for a protective order regarding Hamilton's "Confidential – Attorney's Eyes Only" designations and asked for their position. The Defendants replied on September 12, 2023 that they could not consent to the motion because they believed that the designations were overbroad as set forth in their motion for relief (Dkt. 64). The Plaintiffs now file this opposition and their motion for a protective order simultaneously.

## **LEGAL STANDARD**

Fed. R. Civ. P. 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Courts typically require a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" to establish good cause. *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354 (D.Conn. 2006) (internal quotation marks and citations omitted). If the moving party establishes good cause for protection, the Court may

properly balance countervailing interests with the reasons establishing good cause in deciding whether to grant the order. *Id.* at 356.

## ARGUMENT

The Plaintiffs do not dispute that the common law and the First Amendment both establish a presumption of permitting public access to judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Nor do they dispute that the Second Circuit has established a three-part analysis to determine whether keeping certain information confidential or sealed is appropriate.

The first part of the analysis looks at whether the document is a judicial document. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). A document becomes a judicial document when it is filed with the court and it is "relevant to the performance of the judicial function and useful in the judicial process…." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (internal quotation marks and citations omitted). A document meets this criteria "if it would reasonably have the *tendency* to influence a district court's ruling on a motion…, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.* at 49.

The second part of the analysis occurs after the Court finds a document to be a judicial document. The Court must determine the weight of the presumption of public access. *Id.* at 49. The weight given the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 49. "The strongest presumption attaches where the documents 'determin[e] litigants' substantive rights,' and [the presumption] is weaker

where the 'documents play only a negligible role in the performance of Article III duties.' "
*Olson v. Major League Baseball*, 29 F.4th 59, 89-90 (2d Cir. 2022) (citations omitted). "Thus, a strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss or a summary judgment motion." *Id.*

Finally, the Court must analyze and make "specific, on the record findings" that sealing is necessary "to preserve higher values," and "is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120. The court may deny public disclosure of the record only "if the factors counseling against public access outweigh the presumption of access afforded to that record." *Olson*, 29 F.4th at 88. Among the higher values that courts have recognized warrant the sealing of documents include personal privacy interests, public safety, the preservation of attorney-client privilege, and the protection of competitively sensitive business information. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015). A sealing request is "narrowly tailored" when it seeks to seal only that information that must be sealed to preserve higher values. *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ir.) Ltd.*, 2021 WL 3540221, at *4 (S.D.N.Y. Aug. 11, 2021).

The Plaintiffs analyze each of the designations that they made in turn and submit that the evidence weighs strongly in favor of sealing all of them and preserving their designations under the protective order.

At the outset, the Plaintiffs acknowledge that their deposition transcripts – submitted for purposes of litigating their motion for a preliminary injunction – are judicial documents because they were submitted for purposes of influencing the Court's decision in considering the Plaintiffs' motion for a preliminary injunction.

I.     **The Plaintiffs' Testimony Regarding Where And How They Store Their Firearms Is Negligible To The Court's Determination Of This Action And Sealing That Information Serves Higher Values By Protecting Public Safety.**

The Plaintiffs note that the Defendants make no claim of impropriety as to the designation of their testimony regarding how and where they store their firearms. Dkt. 64, p. 4 n.1. The Plaintiffs nonetheless analyze the claim out of an abundance of caution, and to provide context for their other designations.

This action presents a facial challenge to Connecticut's ban on "assault weapons" and "others." Under the applicable legal standard established in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), how and where the Plaintiffs store their firearms simply has no bearing on the Court's analysis of the Second Amendment's text and relevant history pertaining to analogues similar to assault weapons bans for purposes of deciding the Plaintiffs' motion for a preliminary injunction and any future substantive issues in this lawsuit. How and where the Plaintiffs store their firearms was, however, a legitimate line of inquiry within the broad scope of a discovery deposition. Thus, the Court should consider that the portions of the Plaintiffs' deposition transcripts in which they testified as to how and where they stored their firearms do not constitute judicial documents because the pages containing that testimony have no reasonable tendency to influence the Court's decision on the merits of this matter.

Even assuming that the testimony did constitute judicial documents, the strength of the presumption of public access is weak at best because how and where the Plaintiffs store their firearms has no bearing on any question that the Court is required to decide in this case.

Finally, regardless of whether the Plaintiffs' testimony on this point constitutes judicial documents or whether it enjoys a strong presumption of public access, public safety concerns overwhelmingly outweigh the presumption of access. Compelling the Plaintiffs to reveal to the world exactly how and where they store their firearms is essentially akin to commanding them to tell every prospective criminal in the world how to steal their firearms. Stolen firearms would inevitably lead to far more serious crimes such as murders and assaults. Thus, higher values – public safety – far outweigh any interest the public may have in knowing how and where the Plaintiffs store their firearms.

II.     **Plaintiffs Grant and Stiefel's Testimony Regarding How Many Firearms Of Various Types They Own Is Negligible To The Court's Determination Of This Action And Sealing That Information Serves Higher Values By Protecting The Plaintiffs' Personal Privacy Interests And Public Safety.**

This ground has already been trodden, but it bears repeating. This action presents a facial challenge to Connecticut's ban on "assault weapons" and "others." Under the applicable legal standard established in *Bruen*, how many rifles, shotguns, pistols, and "others" Plaintiffs Grant and Stiefel own simply has no bearing on the Court's analysis of the Second Amendment's text and relevant history pertaining to analogues similar to assault weapons bans for purposes of deciding the Plaintiffs' motion for a preliminary injunction and any future substantive issues in this lawsuit.

Except for a passing and conclusory assertion that the number of rifles, pistols, shotguns, and "others" that Plaintiffs Grant and Stiefel own are somehow at issue in this case, the Defendants offer no reasoning as to why that might be. Dkt. 64, p. 4. At best, they argue that "how many and what types of firearms" that Grant and Stiefel own bears on their ability to defend themselves. *Id.* at p. 8. The Defendants, however, misconstrue *Bruen*. Nothing in

*Bruen* permits the Court to consider whether the Plaintiffs can defend themselves adequately with the firearms that they already possess. Instead, *Bruen* requires the Court to analyze the constitutionality of banning the firearms that the Plaintiffs seek to own.How many rifles, pistols, shotguns, and "others" Grant and Stiefel own has absolutely no bearing on the question of whether the statutory ban on acquiring the "assault weapons" and "others" that Grant and Stiefel seek to acquire  meets the standards set forth in *Bruen*. Thus, the Court should consider that the portions of Grant and Stiefel's deposition transcripts in which they testified to the number of rifles, pistols, shotguns, and "others" do not constitute judicial documents because the pages containing that testimony have no reasonable tendency to influence the Court's decision on the merits here.

Even assuming that the testimony did constitute judicial documents, the strength of the presumption of public access is weak at best because how many rifles, pistols, shotguns, and "others" Grant and Stiefel own has no bearing on any question that the Court is required to decide in this case.

Finally, regardless of whether the Plaintiffs' testimony on this point constitutes judicial documents or whether it enjoys a strong presumption of public access, the combination of personal privacy interests and public safety concerns outweigh the presumption of public access. The public simply has no interest in knowing how many rifles, pistols, shotguns, and "others" Grant and Stiefel own. In fact, Connecticut itself has taken steps to protect the identities of certain individuals who own grandfathered assault weapons under Conn. Gen. Stat. § 53-202d(a)(2)(B)(5) – a fact the Defendants themselves acknowledge. Dkt. 64, p. 9. By doing so, Connecticut has combined the exact interests that Grant and Stiefel assert here –

prohibiting the public dissemination of who owns what types of firearms so as to protect those individuals from harassment and to limit the possibility that criminals could target them for the theft of "assault weapons."

Grant and Stiefel maintain similar personal privacy interests to those recognized by Connecticut statute, and their privacy interest also builds on the state's interest in public safety. If they publicly reveal the number of rifles, pistols, shotguns, and "others" they own, they become targets for public harassment and criminals who may target them for theft based on the number of firearms they own. Both Grant and Stiefel have made individual choices not to risk such harassment or targeting, and the Defendants' argument that they put their firearms ownership at issue in this lawsuit rings hollow. *Id.* at p. 9. Yes, Grant and Stiefel put their firearm ownership at issue in this lawsuit, but they did not put at issue the details of exactly how many of which type of firearms they owned. In fact, under a common-sense reading of *Bruen* standard, they had no reason to suspect that the number of firearms that they own would become an issue in this litigation.

Finally, to the extent that the Defendants' claim that Plaintiff Hamilton's decision not to make similar designations undercuts the Plaintiffs' claims, they misapprehend the test for sealing. *Id.* at pp. 9-10. The test is one of personal privacy interests, not collective litigants' privacy interests. Hamilton's personal decision not to designate the number of firearms she owns is a matter of her personal privacy and safety interests, and it does not serve as an objective yardstick for Grant and Stiefel's personal interests, particularly when Connecticut itself has recognized and protected those personal privacy interests in conjunction with its interests in public safety in Conn. Gen. Stat. § 53-202d(a)(2)(B)(5).

For these reasons, Plaintiffs Grant and Stiefel submit that higher values – the combination of their personal privacy interests as recognized by statute and public safety interests – outweigh any interest the public may have in knowing exactly how many rifles, pistols, shotguns, and "others" they own.

## III. Although Plaintiff Hamilton's Initial Designation Did Not Perfectly Match The Definition Of "Confidential - Attorney's Eyes Only" Under The Standing Protective Order, She Is at Very Least Entitled To A "Confidential" Designation.

At the outset, Plaintiff Hamilton acknowledges that her initial designation of "Confidential – Attorney's Eyes Only" did not fall within the category of trade secrets or other commercially impactful information under the standing protective order. This error was one of counsel who asserted the designation on the fly during Hamilton's deposition in reaction to information that counsel was then given. As the Defendants acknowledge, the designation properly was one of "Confidential." Dkt. 64, p. 2.

Hamilton reiterates the arguments made above that the portion of her deposition transcript in which she testified about certain details of domestic abuse she suffered has no bearing on the analysis the Court must perform and apply to the Plaintiffs' facial challenge to Connecticut's ban on "assault weapons" and "others." Even though the Defendants argue that Hamilton's testimony bears on the reasons she claims to carry a firearm, they offer no analysis or reasoning as to how the specific details of her abuse impacts the Court's analysis of facial constitutionality challenge under *Bruen*. Simply put, the details of Hamilton's domestic abuse are not material to the Court's analysis because the *Bruen* test is a broad one that transcends the Plaintiffs' motivations for owning certain types of firearms.

For the same reasons, even assuming that the testimony did constitute judicial documents, the strength of the presumption of public access is weak at best because Hamilton's testimony about the details of her domestic abuse has virtually no impact on the decision of the substantive issues in this case.

Finally, Hamilton's personal privacy interests outweigh any interest the public may have in knowing any sordid details of the domestic abuse she suffered, and the privacy interests she asserts are well-recognized in applicable law. Hamilton's designations align with confidentiality protections provided to domestic violence victims generally in Connecticut. For example, Conn. Gen. Stat. § 54-86e provides for the confidentiality of a domestic violence victim's name and address in judicial proceedings. Likewise, the federal Violence Against Women Act provides confidentiality protections for domestic violence victims addresses through regulations that the United States Postal Service enacts. *See* 42 U.S.C. § 12321.

Additionally, the Second Circuit has recognized that detained terrorists have personal privacy rights in keeping the details of their abuse and torture private that supersedes the public's interest in learning of those details. In particular, the Second Circuit held that victims of abuse by military personnel or other detainees at the infamous Guantanamo Bay detention center had a privacy interest in "both keeping the personal facts of their abuse from the public eye and in avoiding disclosure of their identities in order to prevent embarrassment…" in a Freedom of Information Act (FOIA) case. *Associated Press v. United States Dept. of Defense*, 554 F.3d 274, 287 (2d Cir. 2009).

There is no principled reason for the Court to reach a different conclusion here. Prior to her deposition, Hamilton instructed the undersigned to take whatever steps they could to

keep any specific testimony about her abuse confidential, and out of the public eye. Out of respect for her request, the undersigned did not discuss these matters with Hamilton in front of the other plaintiffs in this action, and Hamilton herself has not disclosed the details to anyone except the undersigned and counsel for the Defendants during her deposition. Hamilton also does not discuss the details regarding these matters with anyone except counsel and other professionals with whom she enjoys a confidentiality privilege.

Talking about these matters was extremely difficult for Hamilton during her deposition, and she was only able to testify as to those matters because of the steps the undersigned took to preserve confidentiality. She suffered profound embarrassment during her questioning on those matters, and she was forced to make use of the time allotted to her in the breaks before and after her testimony on those matters to compose herself in order to proceed. Thus, while Hamilton does not shy away from admitting that she is a victim of domestic abuse, she experiences considerable embarrassment from letting others learn of the details, and the possibility of others learning the details is a highly emotional and traumatizing experience for her – one that is an unnecessary distraction in the course of the litigation of this case.

Although Hamilton has availed herself of the judicial process and stated that her past domestic abuse is one of the reasons why she seeks certain types of firearms to defend herself, she did not go into details regarding the incidents that underly her claim of domestic abuse. Thus, Hamilton has retained her privacy interests in that information, and her privacy interest is at least equal to the Guantanamo Bay detainees who the Second Circuit held had a privacy interest in keeping the personal facts of their abuse from the public eye.

Other courts have taken a similar view. The Ninth Circuit held, in a FOIA case, that private individuals have nontrivial privacy interests in allegations of domestic abuse. *Burton v. Wolf*, 803 Fed.Appx. 120, 121 (9th Cir. 2020) (making its finding under the "possible embarrassment, harassment, or the risk of mistreatment" standard contained in the federal FOIA). The United States District Court for the District of Massachusetts held, in a white collar criminal case, that personal privacy interests in letters containing detailed accounts of domestic violence attached to a defendant's sentencing memorandum outweighed the presumption of public access because revealing the details courted misuse to "gratify private spite, promote public scandal, or fuel personal vendettas." *United States v. Kravetz*, 948 F.Supp.2d 89, 94 (D.Mass. 2013).

Hamilton's privacy interests clearly outweigh any public interest in the details of her domestic abuse. This case presents a facial challenge to certain provisions of Connecticut's "assault weapons" ban. Thus, the primary issues in this case are of legal vintage, not a fact-intense inquiry. Revealing the details of Hamilton's domestic abuse to anyone other than counsel in this case serves no purpose other than satiate an ill-placed and coarse curiosity regarding violence. It does nothing to further enlighten anyone regarding this case or why Hamilton is bringing it. Instead, it revictimizes Hamilton by forcing her to endure the embarrassing publicizing of events that she has done her best to forget and heal from.

The Court should spare her that embarrassment and retraumatizing and conclude that her personal privacy interests outweigh any interest that the public have in learning the details of her domestic abuse.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Defendants' motion for relief from the Plaintiffs' confidentiality designations.

Dated: September 14, 2023

Respectfully submitted,

_//s//   Doug Dubitsky_
Doug Dubitsky, Esq.
(ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.933.9495
Facsimile: 866.477.1120
Email: doug@lawyer.com


_//s//   Craig C. Fishbein_
Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
Facsimile: 203.294.1396
E-mail: ccf@fishbeinlaw.com

_//s//   Cameron L. Atkinson_
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Facsimile: 203.672.6551
Email: catkinson@atkinsonlawfirm.com

_Attorneys for the Plaintiffs_

14

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

<u>/s/ Cameron L. Atkinson /s/</u>